RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0193p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

No. 18-3720

*v.*

PHILROY JOHNSON,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:18-cr-00057-1—John R. Adams, District Judge.

Argued: August 6, 2019

Decided and Filed: August 13, 2019

Before: SUTTON, GRIFFIN, and READLER, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Scott W. Coyle, SQUIRE, PATTON, BOGGS (US) LLP, Cincinnati, Ohio, for Appellant. Margaret A. Kane, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Scott W. Coyle, Colter L. Paulson, SQUIRE, PATTON, BOGGS (US) LLP, Cincinnati, Ohio, Nathan L. Colvin, VORYS, SATER, SEYMOUR & PEASE LLP, Cincinnati, Ohio, for Appellant. Margaret A. Kane, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. Philroy Johnson developed a penchant for illegally carrying firearms. When he pleaded guilty to possessing a firearm with an obliterated serial number, that

was his fifth firearm conviction. The district court varied upward from the guidelines range by 14 months and sentenced him to the statutory maximum: 60 months. Because the sentence was procedurally and substantively reasonable, we affirm.

In November 2017, officers from the Cleveland Gang Impact Unit took Johnson into custody based on an outstanding arrest warrant, issued when Johnson failed to appear in state court for his arraignment on state charges. The officers searched Johnson and found a loaded pistol with an obliterated serial number, a plastic bag with crack cocaine, a plastic bag containing marijuana, and $460. Johnson pleaded guilty to possessing a firearm with an obliterated serial number. *See* 18 U.S.C. § 922(k).

The probation office calculated Johnson's sentencing guidelines range as 37 to 46 months. The court varied the sentence to 60 months, the statutory maximum. Johnson appealed.

Was this sentence procedurally reasonable? To satisfy that requirement, the court must properly calculate the guidelines range, treat the range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), and sufficiently explain its sentence. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). All without considering impermissible factors or unduly speculating in picking a sentence. *United States v. Parrish*, 915 F.3d 1043, 1048 (6th Cir. 2019).

The court satisfied these imperatives. The court correctly adopted the probation office's proposed guidelines range. It treated that range as advisory. It considered the § 3553(a) sentencing factors. And it provided a detailed explanation for its decision based on facts and reasonable inferences from the record.

Johnson objects that the court improperly speculated in two ways. The first conjecture occurred, he says, when the court talked about the prevalence of gun violence in Cleveland, especially among drug traffickers, and implied that Johnson had participated in some of these shootings. But that argument pushes too hard on what happened. The court rightly acknowledged that Johnson did not have a "history of violence," but then reasonably stated that "carrying a firearm" creates "a heightened risk of violence." R. 41 at 23–24. Johnson admitted that he carried the gun for his own "protection." *Id.* at 19. He had been shot four times for being "involved in stuff" and being "into a lot of things on the streets." *Id.* at 18–19. Even if, as he

claims, none of that stuff was illegal, the court reasonably inferred that carrying a gun in those situations raises the risk of violent conduct.  No undue speculation there.

The second conjecture allegedly occurred when the district court emphasized that the state courts had been lenient in sentencing Johnson before and that this leniency prompted the federal government to bring this case.  But Johnson's four prior state gun convictions and his decision to carry a gun just two days after being released from jail for his last firearm offense show that the state courts' punishments did not deter him.  Nor did the court guess about the government's motivation for bringing this case.  The Assistant United States Attorney told the court that the government filed the indictment due in part to the state courts' lax treatment of Johnson.  That distinguishes this case from *United States v. Hughes*, where we vacated a sentence at the government's bidding in part because the court guessed that the government pursued the case for a reason the government never mentioned.  283 F. App'x 345, 353–55 (6th Cir. 2008).  No undue speculation here either.

Was the sentence substantively reasonable?  Was it too long under the circumstances in other words?  *Rayyan*, 885 F.3d at 442.  A district court gets plenty of deference in this area in view of the many factors that go into this judgment-driven exercise.  *Gall v. United States*, 552 U.S. 38, 51–52 (2007).

No abuse of discretion occurred.  The district court imposed a strict but reasonable sentence.  Johnson had repeatedly violated the gun-possession laws and showed no signs of changing his ways.  He picked up this gun shortly—two days—after being released for his last conviction.  The court observed that it had not seen a defendant with more chances to get "community help" and "treatment," and yet Johnson "failed miserably" at every turn.  R. 41 at 25, 29.

Also supporting the sentence were Johnson's serial convictions for escape, drug possession, drug trafficking, and theft.  He admitted to selling drugs, said he used drugs (while possessing a gun), and was carrying crack cocaine and marijuana when the officers arrested him. The court also noted Johnson's lengthy history of arrests.  Officers had taken him into custody several times each for suspected aggravated robbery, aggravated menacing, kidnapping, robbery,

theft, and firearm offenses, in addition to one occasion of drug possession and felonious assault. The court acknowledged that Johnson had been shot and might suffer post-traumatic stress disorder as a result. But it still found a 60-month sentence necessary to punish Johnson, to deter him from continuing down this perilous path, and to protect the public. We see no basis for reweighing those factors.

Even so, Johnson protests, nothing about this case supported the decision to vary upward to the *statutory maximum*. The guidelines calculate a defendant's criminal history category based on the length of his prior sentences. U.S.S.G. § 4A1.1. And those prior sentences, it's true, didn't suffice by themselves to generate a statutory maximum. But that's why the court explained, in imposing this sentence, that Johnson's prior sentences were too short. And that is precisely what sentencing law allows. By making the guidelines *advisory*, *Booker* contemplates (and allows for) variances—up or down—based on case-specific circumstances. *Kimbrough v. United States*, 552 U.S. 85, 109 (2007); *see United States v. Booker*, 543 U.S. 220, 245 (2005). All in all, the court gave several compelling reasons to justify the variance, including the reality that Johnson's criminal history category didn't capture the seriousness of his record and the concern that he would continue to offend absent a stern sentence.

In a variation on this theme, Johnson adds that, even if the state courts were lenient, that would suggest he should receive a guidelines-range sentence, not the statutory maximum. Because he faced at most 18 months of jail time for his state convictions, he says that a lower federal sentence—within the guidelines range—would still get the message across. Perhaps. But the salient point is that this debate turns on perspective—and the perspective that counts, so long as it is reasoned, is the district court's, not the defendant's.

Johnson worries that this statutory-maximum sentence won't leave room to distinguish cases where a gun-possessing defendant breaks more badly, say by fleeing from the police or by engaging in violence or by doing other things worse than Johnson did them. *See United States v. Aleo*, 681 F.3d 290, 301–02 (6th Cir. 2012); *United States v. Poynter*, 495 F.3d 349, 353–55 (6th Cir. 2007). But that point and these cases don't help Johnson. *All* statutory maximums eliminate room for distinctions with respect to *all* individuals who deserve sentences higher than the maximum. Plus, the trial courts in these cases varied upward 145% and 206%, respectively, to

reach the statutory maximum of 60 years. *Aleo*, 681 F.3d at 300–01; *Poynter*, 495 F.3d at 353. By contrast, this court varied upward just 30% to reach the statutory maximum of five years. A five-year range leaves much less room for appropriate distinctions than a sixty-year range.

In another sense, by the way, these cases hurt Johnson's cause. In each of them, we said that "a long list of prior" convictions for the same kind of crime counts as a distinguishing factor that could warrant imposing the statutory maximum. *Poynter*, 495 F.3d at 354; *see Aleo*, 681 F.3d at 302. Johnson fits that bill. He had a host of firearm convictions and learned nothing from prior, less-severe sentences.

*United States v. Warren* doesn't change things either. 771 F. App'x 637 (6th Cir. 2019). In vacating that defendant's sentence, we noted that the district court imposed a statutory maximum sentence of 10 years. That was nearly double the recommended range of 51–63 months, far more than the modest increase here. *Id.* at 638. And the defendant there had only two prior firearm convictions, half as many as Johnson's four. Decision-making by analogy can be an imprecise art, we realize. But it's not so imprecise that Warren's case governs Johnson's.

Johnson presents data purporting to show that the district court judge in this case varies upward from the guidelines range more often than other judges in the Northern District of Ohio. But the data contains too little information about the other cases to tell us anything useful. It does not say what crimes the other defendants committed, the circumstances surrounding the crimes, or the defendants' prior records. All of these considerations bear on the individualized factors pertinent to each sentencing decision. 18 U.S.C. § 3553(a)(1). Congress requires courts to avoid unnecessary sentencing differences only "among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6). Johnson doesn't point to any cases with analogous crimes and analogous records, let alone nationwide disparities based on them. *See Rayyan*, 885 F.3d at 442.

But surely, Johnson persists, the data at a minimum shows that this district court judge imposes more upward variances than other judges in the district—and that is unfair to Johnson. At day's start and day's end, this is a complaint about *Booker*—and the system of advisory guidelines that it created. *Any* system of advisory guidelines will lead to all kinds of variations

that affect individual criminal defendants, sometimes in their favor, sometimes not. With 94 district courts in this country and hundreds of federal judges, it is a given that such discretion will lead to variation: from one district to another, from one trial judge to another, and (we daresay) from one appellate judge to another about the threshold for identifying abuses of discretion by trial judges in exercising this power. All we can say in this case is that this 14-month upward variance did not exceed the judge's discretion and was supported by the record and his explanations for the sentence. Which brings us back to the beginning: Reasoned judgments about the appropriate length of a sentence are largely for trial courts, not appellate courts.

We affirm.