RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0300p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MANNDRELL EVANN LEE,

*Defendant-Appellant*.

> No. 18-2391

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:18-cr-00115-1—Robert J. Jonker, Chief District Judge.

Argued: October 25, 2019

Decided and Filed: September 4, 2020

Before: CLAY, STRANCH, and MURPHY, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Xiao Wang, WILKINSON WALSH + ESKOVITZ LLP, Washington, D.C., for Appellant. Timothy VerHey, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Xiao Wang, WILKINSON WALSH + ESKOVITZ LLP, Washington, D.C., for Appellant. Timothy VerHey, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

CLAY, J., delivered the opinion of the court in which STRANCH, J., joined. MURPHY, J. (pp. 15–26), delivered a separate dissenting opinion.

---

**OPINION**

---

CLAY, Circuit Judge.   Defendant Manndrell Lee appeals his sentence of 60 months' imprisonment for possession of a stolen firearm in violation of 18 U.S.C. § 922(j), a sentence which reflects an upward variance of almost two years from the high end of Lee's 30 to 37 months guidelines range.   The district court imposed this extreme variance purportedly due to Lee's criminal history.   A district court is certainly able to vary upward from a defendant's advisory guidelines range based on his criminal history and a specific need for deterrence. *See* 18 U.S.C. § 3553(a).   But where, as here, nothing uniquely problematic about the defendant's criminal history demonstrates a specific need for deterrence beyond that already captured in the guidelines range, our case law has recognized that some meaningful relationship between the offense of conviction and a defendant's alleged likelihood of reoffending is needed.   Because Lee's criminal history has little bearing on the instant offense, it does not justify the two-year upward variance that the district court imposed, which nearly doubled Lee's recommended sentence under the guidelines.   We therefore vacate Lee's sentence and remand for resentencing.

**BACKGROUND**

Manndrell Lee is thirty-nine years old.   Over fifteen years ago, at the age of twenty-one, Lee was convicted of second degree criminal sexual conduct ("CSC") after he pleaded guilty to engaging in sexual activity with a fourteen year old whom he met at a bar that required patrons to be at least eighteen years old to enter.[1]   This incident changed the course of Lee's life.   He was originally sentenced to only 12 months' imprisonment.   However, after completing his 12-month

---

[1]The government did not dispute Lee's account of these events at sentencing.  According to Lee, he and his friend met the victim and her friend at a bar in which patrons needed to be eighteen years old to enter. Lee had been drinking heavily at the time, and he did not know the victim's true age.  He reported that the group left the bar and traveled to his friend's home, where he and the victim engaged in non-coercive sexual activity.  Lee said that he did not offer the additional information regarding his CSC conviction to the district court in order to deny responsibility for the wrongdoing. "Rather, he seeks to provide this additional information to the Court in light of the impact that this offense has had on his life.  The offense has inhibited his ability to secure employment, housing, and forge a relationship with his young children.  The offense also requires registration as a sex offender, and Mr. Lee's failure to timely meet the registry requirements gave rise to his status as a parolee at the time of the [instant] offense." (Def.'s First Resp., R. 27, Pg. ID 66.)

sentence, Lee violated his probation by failing to comply with sex offender registration laws and failing to secure a job. Accordingly, his probation was revoked and he was reincarcerated.

From 2004 to 2018, Lee consistently violated the conditions of his parole, most often by failing to comply with sex offender registration laws and the terms of his location monitoring.[2] Lee was punished and incarcerated for each of those violations. In fact, as a result of Lee's many parole violations, what was originally a 12-month sentence for his CSC offense from 2003 turned into a largely continuous period of fifteen years of incarceration.

In 2018, while on parole after his latest release from custody, Lee was riding as a passenger in his girlfriend's car. Law enforcement initiated a traffic stop and after instructing Lee to exit the vehicle, Lee attempted to flee. Law enforcement tackled him and discovered that he was in possession of an unregistered firearm. Lee subsequently pleaded guilty to possession of a stolen firearm, in violation of 18 U.S.C. § 922(j).

This is the instant offense for which Lee was sentenced in the present case: possession of a stolen firearm. It was the first firearm offense in Lee's criminal history. Lee was not being sentenced anew for his fifteen-year-old CSC offense, and he was not being sentenced anew for his multiple parole violations.

Of course, as relevant here, Lee's advisory guidelines range for the instant offense accurately reflected his criminal history. He was assigned the maximum three points for his 2003 CSC conviction. He was also assigned the maximum three points for each of his other

---

[2]Sex offender registration laws have been the subject of much litigation in this Court. In 2016, we invalidated the application of certain provisions of Michigan's Sex Offender Registration Act ("SORA") as unconstitutional under the Ex Post Facto clause. *See Does #1–5 v. Snyder*, 834 F.3d 696, 706 (6th Cir. 2016). We stated:

> SORA brands registrants as moral lepers solely on the basis of a prior conviction. It consigns them to years, if not a lifetime, of existence on the margins, not only of society, but often, as the record in this case makes painfully evident, from their own families, with whom, due to school zone restrictions, they may not even live. It directly regulates where registrants may go in their daily lives and compels them to interrupt those lives with great frequency in order to appear in person before law enforcement to report even minor changes to their information.

*Id.* at 705. SORA is also currently facing constitutional challenges in the Michigan Supreme Court. *See People v. Betts*, 928 N.W.2d 699 (Mich. 2019) (Order Granting Leave to Appeal). In contrast, we have upheld the constitutionality of the federal Sex Offender Registration and Notification Act ("SORNA"), Pub. L. No. 109-248, 120 Stat. 590, 34 U.S.C. § 20901 *et seq. See Willman v. U.S. Attorney General*, --- F.3d ---, No. 19-2405, 2020 WL 5033039 (6th Cir. Aug. 26, 2020).

adult convictions within the applicable time period—failure to comply with the Michigan Sex Offender Registration Act in 2010, and a drug possession/resisting arrest conviction in 2015.

The PSR rightly did not treat Lee's multiple parole violations as separate offenses in assigning points but instead referred each violation back to his original sentence. *See* U.S.S.G. § 4A1.2(k) ("In the case of a prior revocation of [parole], add the original term of imprisonment to any term of imprisonment imposed upon revocation."). This method of dealing with parole violations is intentional under the guidelines in order to allay concerns about double jeopardy and undue harshness, given that Lee has already been incarcerated for each of his parole violations. *See id.* cmt. n.11 ("Rather than count the original sentence and the resentence after revocation [of probation, parole, mandatory release, or supervised release] as separate sentences, the sentence given upon revocation should be added to the original sentence of imprisonment, if any, and the total *should be counted as if it were one sentence*. By this approach, no more than three points will be assessed for a single conviction, even if probation or conditional release was subsequently revoked." (emphasis added)). The PSR also did not assign Lee points for his two, decades-old juvenile adjudications, which occurred at the ages of twelve and fifteen respectively, but that was correct under the guidelines in order to avoid unwarranted sentencing disparities. *See* U.S.S.G. § 4A1.2(d); *see also id.* cmt. n.7 ("[F]or offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted.").[3]

---

[3]It is worth noting that Lee's criminal history score also did not reflect his mitigating evidence. At sentencing, Lee put on evidence of his attempt to overcome his difficult childhood following his juvenile adjudications. For example, while at one of the juvenile facilities, Lee received his GED and enrolled in college-level courses. He also ran competitive track, participating in the long jump and excelling at sprint races. These efforts appear to have continued throughout Lee's life. While incarcerated, Lee participated in several training programs, receiving certificates in carpentry, applied mathematics, digital literacy, and personal finance. In addition, in preparation for sentencing for the instant offense, Lee's fiancée wrote to the district court expressing her belief that when Lee is released, he will be coming home to "a great and amazing support team," including "a loving and caring wife." (Def.'s Sent. Mem., Letter of Support, R. 30-1, Pg. ID 110–11.) We note these facts reflecting positively on Lee's character here because, of course, they are entitled to be taken into account as part of his unique "history and characteristics," as are those reflecting negatively. 18 U.S.C. § 3553(a)(1).

Based on this criminal history, Lee was initially assessed a criminal history score of 9. However, he received an additional two points for being on parole at the time of the instant offense, *see* U.S.S.G. § 4A1.1(d), resulting in a final criminal history score of 11. His corresponding criminal history category was V, the second highest category available.

Based on a criminal history category of V, Lee's guidelines range for the instant offense was 30 to 37 months' imprisonment.[4] Notwithstanding that the advisory guidelines range accurately reflected Lee's criminal history, the district court decided to drastically vary upward from the high end of that range based on three things: (1) Lee's "long and serious criminal history," (2) his parole violations and disciplinary violations in custody, and (3) his CSC offense from 2003, which the district court found "troubling." (Statement of Reasons, R. 35, Pg. ID 132; Sent. Hr'g Tr., R. 41, Pg. ID 189.)

Lee now appeals his 60-month sentence, arguing that the district court's 23-month upward variance was substantively unreasonable.

## DISCUSSION

This Court reviews the substantive reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). Simply put, a defendant's sentence is substantively unreasonable if it is too long. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). A sentence is too long when it is "greater than necessary" to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)(2). *See* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."); *accord, e.g.*, *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 765–66 (2020). These sentencing goals include the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from

---

[4]The PSR wrongly calculated Lee's total offense level as 19 based on its conclusion that his CSC offense from 2003 was a crime of violence. *See* U.S.S.G. § 2K2.1(a)(4)(A). However, at the sentencing hearing, the district court determined under the categorical approach that Lee's 2003 CSC offense did not qualify as a crime of violence. Accordingly, Lee's offense level decreased from 19 to 13, and his corresponding guidelines range decreased from 51 to 71 months' imprisonment to 30 to 37 months' imprisonment. The government did not object to this determination at sentencing, and it does not challenge it on appeal.

further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)–(D).

When determining whether these sentencing goals are met, "district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018) (emphasis in original) (quoting *Peugh v. United States*, 569 U.S. 530, 541 (2013)). "Courts are not bound by the Guidelines, but even in an advisory capacity the Guidelines serve as 'a meaningful benchmark' in the initial determination of a sentence and 'through the process of appellate review.'" *Id.* (quoting *Peugh*, 569 U.S. at 541). This is because "in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)); *see also Rita v. United States*, 551 U.S. 338, 348–50 (2007) (explaining that the Sentencing Commission calculates its guidelines ranges in an effort to carry out the § 3553(a) objectives).

Accordingly, if a district court determines that a defendant's guidelines range fails to properly reflect the § 3553(a) factors (including the need for deterrence), it must provide a "sufficiently compelling" justification for that conclusion. *Gall*, 552 U.S. at 50. While we review all sentences for an abuse of discretion, we do not presume that a sentence outside of the guidelines range is reasonable. *See id.* at 51; *see also United States v. Solano-Rosales*, 781 F.3d 345, 356 (6th Cir. 2015) ("No presumption of reasonableness applies to sentences that, like the one imposed on [d]efendant, are outside the guidelines range.").[5] Moreover, a greater variance from the guidelines range requires a more compelling justification. *Gall*, 552 U.S. at 50.

---

[5]It seems to us that our dissenting colleague violates this principle by applying a presumption of reasonableness to the district court's significant variance here. While we always afford due deference to a district court's decision to impose a sentence outside of the guidelines range given the district court's institutional advantage, *see Gall*, 552 U.S. at 52, we must also be careful not to read appellate reasonableness review out of our sentencing regime. As the Supreme Court recently put it, in substantive reasonableness cases, "the question for an appellate court is simply, as here, whether the trial court's chosen sentence was 'reasonable' or whether the judge instead 'abused his discretion in determining that the § 3553(a) factors supported' the sentence imposed." *Holguin-Hernandez*, 140 S. Ct. at 766 (quoting *Gall*, 552 U.S. at 56).

Under this framework, Lee's sentence is substantively unreasonable. In imposing the sentence, the district court placed too much weight on Lee's prior CSC conviction and his parole violations—offenses which bore no meaningful relationship to the instant offense—and not enough weight on the need to treat like defendants alike. *Compare* 18 U.S.C. § 3553(a)(1)–(2), *with id.* § 3553(a)(6). In addition, the degree of the variance that the district court imposed is so great that it constitutes an abuse of discretion. By adding 23 months' incarceration onto Lee's sentence, the district court nearly doubled it. What would have been a 30 to 37 months sentence under the guidelines turned into a 60 months sentence based on the district court's variance. Nothing in the record justifies that result, even under our deferential standard of review.

The district court purportedly imposed such a significant variance because of Lee's criminal history, including his two juvenile adjudications, his CSC offense from 2003, and his parole violations. Certainly, our case law permits a sentencing court to consider a defendant's criminal history in its analysis of the 18 U.S.C. § 3553(a) factors, even when the defendant's guidelines range already reflects it. *See United States v. Trejo*, 729 F. App'x 396, 399–400 (6th Cir. 2018) ("This Court has consistently held that a district court neither commits procedural error, nor pronounces a substantively unreasonable sentence, simply because, in evaluating the 18 U.S.C. § 3553(a) factors, it considers, as one component of its decision to vary upward from the Guidelines, conduct that also factored into calculating the Guidelines range." (collecting cases)). In other words, so-called "double counting" a defendant's criminal history is appropriate in some cases. But even though double counting a defendant's criminal history is appropriate in some cases, it was not reasonable in this case and certainly does not compellingly justify the significant variance that the district court imposed.

Importantly, in each of the cases in which we have upheld a district court's decision to vary upward based on a defendant's criminal history—a history which is already captured by the advisory guidelines range—we have emphasized the relationship between the instant offense and the defendant's prior offenses. This principle serves an important purpose in limiting a district court's discretion to double count a defendant's criminal history in cases like this one. Where, as here, no uniquely problematic criminal history demonstrates a specific need for deterrence beyond that already captured by the guidelines, then some meaningful relationship between the

offense of conviction and the defendant's alleged likelihood of reoffending is needed.[6] Our holding in *United States v. Johnson*, and other published case law, readily demonstrates this.

In *Johnson*, the defendant was sentenced for possession of a firearm with an obliterated serial number. 934 F.3d 498, 499 (6th Cir. 2019). We noted at the outset that Johnson had developed "a penchant for illegally carrying firearms," and upheld a 14-month upward variance because the instant offense was the defendant's "fifth firearm conviction" and he had decided to carry a gun "just two days after being released from jail for his last firearm offense." *Id.* at 499–500. We explicitly stated that "Johnson's four prior state gun convictions and his decision to carry a gun just two days after being released from jail for his last firearm offense show that the state courts' punishments did not deter him." *Id.* at 500. Even then, we called the sentence imposed "strict but reasonable." *Id.*

Notably, the defendant in *Johnson* received a 60-month sentence for his fifth firearm conviction based on a 14-month upward variance. This is the same sentence that Lee would be receiving for his first firearm conviction based on a 23-month upward variance. Although "[d]ecision-making by analogy can be an imprecise art," *id.* at 501, we cannot overlook the fact that Lee's sentence would be the same as the defendant's in *Johnson* based on a *greater* variance. This is so despite the fact that the same § 3553(a)(2) factors purportedly justified both variances—namely, the need for deterrence and to protect the public. Clearly something is going wrong if we allow the same justifications to support a lesser variance for a defendant's "fifth firearm conviction" that occurred "just two days after being released from jail for his last firearm offense," *id.* at 499–500, while somehow also supporting a greater variance for Lee's first firearm offense that occurred fifteen years after his last dangerous conduct.

---

[6]Our dissenting colleague maintains that the nature and circumstances of Lee's offense set it apart from the mine-run case the guidelines contemplate because Lee "had absconded from parole, attempted to flee the arresting officers, and struggled with them when they tried to apprehend him." (Dissent at 20.) But as we discuss below, Lee's guidelines calculation took his parole status into account. And the specific acts of fleeing from police officers or struggling with them during an arrest are not unusual or abnormal for defendants charged with possession of a stolen firearm. *See United States v. Perez-Rodriguez*, 960 F.3d 748, 755 (6th Cir. 2020) (employing similar reasoning when analyzing a mine-run illegal reentry offense). Moreover, the district court did not purport to justify its variance using the circumstances of the instant offense; the district court instead focused almost entirely on Lee's criminal history.

We have employed similar reasoning in our other published cases permitting a district court to vary upward based on these same § 3553(a) factors (including the cases on which the government and the dissent rely). In *United States v. Sherer*, for example, the defendant was sentenced for bank robbery and using a firearm in relation to a crime of violence. 770 F.3d 407, 410 (6th Cir. 2014). In that case, we upheld the upward variance because the defendant had robbed five Toledo banks over the course of a month, and he had robbed the latest bank "just 'eight months' after spending ten years in jail for a previous robbing spree." *Id.* at 412–13; *see also id.* at 409 (explaining that "Quentin Sherer had a habit of robbing banks"). And in *United States v. Lanning*, one of the cases on which the government relies, we upheld an 18-month upward variance because the defendant had numerous prior theft convictions that revealed that he "essentially made his living as a thief," and the instant offense was a theft offense. 633 F.3d 469, 472 (6th Cir. 2011).

In each of these cases, the similarity between the defendant's prior convictions and the instant offense demonstrated a need for deterrence beyond that already captured by the guidelines. In contrast, in the present case, there is no such meaningful relationship between the instant offense and Lee's alleged incorrigibility. As noted above, this was Lee's first firearm offense in his entire criminal history. Moreover, Lee had not been convicted of any violent crime since his CSC conviction in 2003, a conviction which occurred fifteen years prior to the instant offense.[7]

These facts readily distinguish Lee's case from the above cases and our other cases upholding a district court's conclusion that a specific need for deterrence, beyond that already reflected in the guidelines range, justified an upward variance. *See, e.g.*, *United States v. Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020) (upholding an upward variance for firearm offenses

---

[7]With regard to Lee's juvenile adjudications, the government again did not dispute Lee's account of the events underlying those adjudications at sentencing. Lee's account was therefore incorporated into the final PSR and the district court (and the dissent) erred to the extent that it speculated as to any other version of the events. *See United States v. Van*, 541 F. App'x 592, 597–98 (6th Cir. 2013). According to Lee, he pleaded guilty to an involuntary manslaughter charge over twenty-five years ago solely due to pressure from his mother "who was very frightened and did not want to go through the experience of a court process," although the child victim's death was a tragic result of childhood roughhousing and horseplaying in a levee near Lee's mother's home in Georgia. (Def.'s Second Resp., R. 28, Pg. ID 68; *see also* PSR, R. 29, Pg. ID 78.) Lee was twelve years old at the time. At the time of his armed robbery conviction in 1996, he was fifteen.

based in part on the defendant's "previous criminal history, which included two separate violent crimes that he committed with firearms," and the fact that the defendant committed the instant firearm offenses "only a few months upon being released from a second lengthy prison stay"); *United States v. Robinson*, 892 F.3d 209, 214 (6th Cir. 2018) (upholding an upward variance for possession with intent to distribute fentanyl because the defendant "ha[d] proven over many, many, many years that he would continue to distribute opioids absent a very long period of incarceration" (internal quotation marks and record citation omitted)); *United States v. Tristan-Madrigal*, 601 F.3d 629, 634 (6th Cir. 2010) ("In sum, the dangerousness of Tristan-Madrigal's behavior, coupled with the fact that Tristan-Madrigal's prior drunk-driving convictions were an ongoing problem *directly related to and underlying* the instant § 1326 conviction, support the district court's conclusion that Tristan-Madrigal was a dangerous person and needed to be incarcerated." (emphasis added)); *United States v. Herrera-Zuniga*, 571 F.3d 573, 590 (6th Cir. 2009) (upholding an upward variance for illegal reentry because the defendant "had illegally reentered the United States only a few months after being deported for the third time" and the instant offense was "the latest incident in a series of encounters with authorities over the last ten years involving *nearly identical* conduct" (emphasis added)).[8]

Our dissenting colleague refuses to apply the consistent reasoning that we have employed in these cases to the present case. While he concedes that this reasoning exists (as he must), he argues that these cases merely show that a relationship between the offense of conviction and a defendant's prior offenses is a "sufficient condition" for double counting, rather than a necessary one. (Dissent at 22.) That may be true. But the question before us is not whether this type of relationship is necessary in every case—the question is whether it was necessary in this case.

---

[8]And, at the risk of belaboring the point, we note that many of the unpublished cases on which the dissent and the government rely employ this reasoning as well. *See, e.g.*, *United States v. Wade*, 744 F. App'x 265, 266 (6th Cir. 2018) (upholding an upward variance for check fraud because the case marked the defendant's "sixth total conviction for check fraud" and his guidelines range "failed to reflect that his two prior federal convictions were for the same misconduct, showing Wade was 'very likely to reoffend'"); *United States v. Heard*, 749 F. App'x 367, 375 (6th Cir. 2018) (upholding an upward variance because the defendant "had previously served a nine-year sentence for violent firearms offenses, which had injured two people and threatened two more" and "his prior sentences had done nothing to deter Heard from once again returning to the streets with a gun and firing it"); *United States v. Martinez-Rendon*, 454 F. App'x 503, 504 (6th Cir. 2012) (upholding an upward variance for illegal reentry based in part on the defendant's "repetition of the instant offense" where the defendant already "had been deported on two separate occasions").

And it was necessary here because there was nothing else uniquely troublesome about Lee's criminal history that demonstrated a need for deterrence beyond that already captured in his guidelines range. Without any relationship between the instant offense and Lee's supposed criminal propensities and without any unique propensity towards violence, there was no other sufficient basis, let alone a "sufficiently compelling" one, for the district court's decision to double count.[9] *Gall*, 552 U.S. at 50.

In fact, the record reveals that the district court, at most, imposed its two-year variance because it was concerned that Lee would again violate his parole upon release from custody in some unknown way at some unknown point in the future. (*See* Sent. Hr'g Tr., R. 41, Pg. ID 191 ("[O]therwise I feel that we're going to be in a long-running pattern and cycle of custody, return to community, violation, and back to custody. And that's not good for anybody. . . . But I believe the 60-month intended sentence of the Court is needed to achieve that.").) While an understandable concern, it is not "sufficiently compelling to support the degree of the variance" that the district court imposed. *Gall*, 552 U.S. at 50.

Contrary to the district court's understanding, § 3553(a) does not give a court unfettered discretion to preemptively add more time onto a defendant's sentence for the instant offense based on its speculation that the defendant might commit some other nonviolent crime at some unknown point in the future. Instead, in order to subject a defendant to additional time behind bars based on speculative future criminal activity, there must be some need for deterrence and likelihood of reoffending over and above that already captured by the guidelines range. *See Tristan-Madrigal*, 601 F.3d at 634 (distinguishing the defendant's case "from those cases where a sentencing court improperly speculates that an individual will cause some particular harm at a future point in time or will commit another, more harmful version of a criminal offense"); *see*

---

[9]As a result, we can save the dissent's hypotheticals and analogies for another day. Unlike a hypothetical defendant who commits a series of violent crimes, Lee has not been convicted of a violent crime in over fifteen years (and even that is assuming that his CSC conviction from 2003 was violent). Instead, in the past fifteen years, Lee's "consistent pattern of misconduct" has mostly been for minor parole violations and otherwise for two nonviolent convictions that were already included in his criminal history score. These facts make this case wholly distinguishable from our other cases in which we have upheld a district court's variance based on a specific need for deterrence or, at the very least, cases in which we have noted the seriousness of the defendant's conduct and his dangerousness to the public. Neither the dissent nor the government gives us any basis for overlooking these distinctions.

*also Heard*, 749 F. App'x at 388 (Moore J., concurring in part and dissenting in part) (discussing the process of de-escalation from crimes and explaining why a defendant's general recidivism "is not enough to justify ratcheting up from the most recent sentence").**10** This is especially true where the concern appears to be that the defendant will again violate parole, not that he will endanger the public.

Thus, even if it would be more efficient to allow the district court to vary upward based on its speculation that Lee will again violate parole upon release from custody in some unknown way in the future, our substantive reasonableness case law requires more. *See Rosales-Mireles*, 138 S. Ct. at 1907 ("'To a prisoner,' th[e] prospect of additional 'time behind bars is not some theoretical or mathematical concept.' '[A]ny amount of actual jail time' is significant, and 'ha[s] exceptionally severe consequences for the incarcerated individual [and] for society which bears the direct and indirect costs of incarceration.'" (citations omitted) (second, third, and fourth alterations in original)).

Section 3553(a) is also not an excuse for a district court to subject a defendant to, what is in essence, plenary resentencing for his prior offenses—especially when those offenses bear no similarity to the instant offense. To be sure, Lee's multiple parole violations are undoubtedly culpable conduct for which he should be punished. But he has been. In fact, as a result of Lee's many parole violations stemming from his CSC offense, Lee has been incarcerated for approximately ten years, even though his initial sentence for that offense was only 12 months. Moreover, in calculating his criminal history score, Lee was assigned three points for his 2003 CSC offense only because of his subsequent parole violations. Had Lee never violated probation

---

**10**In her opinion in *Heard*, Judge Moore explained:

> [T]he simple fact of a defendant's recidivism is not enough to justify ratcheting up from the most recent sentence. Consider two defendants, both of whom are released from prison after serving ten-year sentences for shooting someone. One is arrested one year later for shooting someone else. The other is arrested one year later for shoplifting. Both have failed to show that they have ceased committing crimes, but that would not make it substantively reasonable to give them each more than ten years. People do not always stop committing crimes all at once; often, they first progress to committing lower-level ones. That does not mean that they are getting worse or even staying the same. *See* Marc Le Blanc & Rolf Loeber, *Developmental Criminology Updated*, 23 CRIME & JUST. 115, 123, 152 (1998) (discussing "de-escalation" as part of the process of desistance from crime).

749 F. App'x at 388 (Moore J., concurring in part and dissenting in part). We find this reasoning persuasive.

or parole, his CSC offense would not have counted towards his criminal history score for the instant offense because it would have been outside of the applicable time period. *See* U.S.S.G. § 4A1.2(e)(1) ("Any prior sentence of imprisonment *exceeding one year and one month* that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. (emphasis added)). *But see id.* § 4A1.2(k) ("In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation."). And Lee received an additional two points towards his guidelines calculation for the instant offense because he was on parole at the time. *See* U.S.S.G. § 4A1.1(d).

To continue to punish Lee for his past parole violations—particularly when they are unrelated to the offense for which he is being sentenced—is unduly harsh and entirely unreasonable. Neither our case law nor the statutory § 3553(a) factors support it. Instead, absent circumstances presenting a unique need for specific deterrence beyond the guidelines range, our case law calls for some meaningful relationship between the instant offense and the defendant's alleged likelihood of reoffending. Otherwise, a defendant could be perpetually punished for a prior conviction based solely on the district court's view of how "troubling" that past conviction was. (Sent. Hr'g Tr., R. 41, Pg. ID 189.) Our case law does not permit this. That is because allowing a district court to use the instant offense as a springboard to resentence a defendant for prior offenses that do not bear any relation to the instant offense would directly contravene many of the sentencing goals articulated by Congress. Most importantly, it contravenes the need to avoid unwarranted sentencing disparities among defendants with similar criminal histories. *See* 18 U.S.C. § 3553(a)(6); *see also United States v. Warren*, 771 F. App'x 637, 642 (6th Cir. 2019) ("We have reasoned that, because the Guidelines already account for a defendant's criminal history, imposing an extreme variance based on that same criminal history is inconsistent with 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct' under 18 U.S.C. § 3553(a)(6)." (collecting cases) (quoting § 3553(a)(6))).

In summary, Lee's sentence is far too long for his offense of conviction. In imposing the sentence, the district court placed too much weight on Lee's criminal history, and not enough

weight on the need to treat like defendants alike. *Compare* 18 U.S.C. § 3553(a)(1)–(2), *with id.* § 3553(a)(6). Without question, recidivism is an unfortunate aspect of our criminal justice system, and it may very well be a concern that is implicated in Lee's case. However, we must not forget that Lee's advisory guidelines range already reflected his likelihood of reoffending and his need for deterrence. *See* U.S.S.G. Ch. 4, Pt. A, intro. cmt. (stating that § 4A1.1 reflects correlates of recidivism and patterns of career criminal behavior); *Rita*, 551 U.S. at 348–50 (explaining that the Sentencing Commission calculates the guidelines ranges in order to reflect the § 3553(a) factors); *see also Rosales-Mireles*, 138 S. Ct. at 1904 (stating that a defendant's guidelines range remains "a meaningful benchmark . . . through the process of appellate review" (quoting *Peugh*, 569 U.S. at 541)). Therefore, something more was needed in order for the district court to subject Lee to two additional years of incarceration beyond the guidelines recommendation. As the applicable case law discussed above demonstrates, that something more was missing in this case.

## CONCLUSION

Because Lee's above-guidelines sentence is substantially greater than necessary to achieve the sentencing goals of § 3553(a)(2), we **VACATE** the sentence and **REMAND** for resentencing consistent with this opinion.[11]

---

[11]In addition to his meritorious argument that the district court placed too much weight on his criminal history, Lee argues that his sentence is unreasonable because the district court failed to consider mitigating circumstances surrounding his mental health. We do not decide this question at this time because it is unnecessary to our resolution of Lee's appeal.

---

**DISSENT**

---

MURPHY, Circuit Judge, dissenting.  Manndrell Lee's sentence implicates an important criminal-justice debate about how best to balance two often-conflicting sentencing goals: the need to treat like individuals alike and the need to consider each person's unique circumstances. Before *United States v. Booker*, 543 U.S. 220 (2005), federal law heavily favored the first goal. District courts generally could not depart from the guidelines range calculated for a defendant under the Sentencing Guidelines, which ensured that a defendant would receive a sentence like those imposed on similar defendants.  After *Booker*, the pendulum has swung back the other way.  District courts may now vary from the guidelines range due to a defendant's specific facts.

Whether we appellate judges prefer one or the other of these sentencing goals, the Supreme Court has given us clear instructions: A district court has wide discretion to sentence a defendant within the guidelines range or to vary outside it.  *See Gall v. United States*, 552 U.S. 38, 51 (2007).  Those instructions require us to affirm Lee's sentence in this case.  Lee says that the district court abused its discretion when it sentenced him to 60 months' imprisonment, a term well above the 37-month sentence the court believed to be the top end of his guidelines range. But the court reasonably explained why Lee's case fell "outside the 'heartland' of cases" for which a guidelines sentence would be the most appropriate: His guidelines range did not adequately account for his consistent pattern of misconduct.  *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019) (citation omitted).  We have repeatedly upheld variances on these criminal-history grounds.  And I disagree with my colleagues' decision to limit our many cases here by requiring that a defendant's prior crimes be related to the defendant's current offense before a district court may vary upward based on those prior crimes.  Any such rule would contradict both 18 U.S.C. § 3553(a)'s text and our precedent.  I thus respectfully dissent.

I

Unfortunately, Manndrell Lee has regularly encountered the criminal-justice system.  In 1993, when he was just 12, he pleaded guilty to involuntary manslaughter in juvenile court in

exchange for the dismissal of a murder charge. According to Lee, this conviction stemmed from a child's drowning death while the two were engaged in "horseplay" at a levee. Three years later, a jury convicted Lee of armed robbery. He spent a portion of the next four years in custody.

In 2003, at the age of 21, Lee pleaded guilty to second-degree criminal sexual conduct. This Michigan conviction arose from his having sex with a 14-year-old girl. (Lee says he engaged only in consensual oral sex.) Between 2003 and 2018, Lee repeatedly violated the conditions of his parole, so he jumped back and forth between parole and prison. He spent over 10 of these 15 years in prison, accumulating a long list of prison-misconduct citations for violations like being out of place or creating a disturbance. When out of prison, Lee's parole violations included failing to register as a sex offender, failing to attend sex-offender treatment, having contact with minors, failing to remain 1,000 feet from a school, and failing to comply with location monitoring. He also twice absconded from parole. In addition to the parole violations, he pleaded guilty to four more crimes: possessing methamphetamine, failing to register as a sex offender, and twice assaulting, resisting, or obstructing a police officer.

In 2017, after Lee evaded parole a third time, his parole officer obtained an arrest warrant. In March 2018, police received information about Lee's whereabouts. Officers stopped a vehicle in which Lee was a passenger and asked for his name. After giving a false name, Lee attempted to flee. Officers tackled Lee and handcuffed him while he resisted arrest. The officers found in his possession a stolen revolver containing five live rounds and one spent round of ammunition.

Lee pleaded guilty to possessing a stolen firearm. 18 U.S.C. §§ 922(j), 924(a)(2). His presentence report initially set his guidelines range at 57 to 71 months' imprisonment. The report calculated this range by treating Lee's Michigan sex offense as a "crime of violence" and by placing Lee in the second highest criminal-history category (category V). The district court, on its own initiative, decided that the sex offense was not a "crime of violence." That change reduced Lee's guidelines range to between 30 and 37 months. (Unbeknownst to the court until sentencing, Lee's presentence report failed to include two of Lee's recent convictions in state court for tampering with an electronic monitoring device and being a habitual offender. If the

report had included those convictions, Lee's criminal-history category would have increased to the highest category (category VI) and his guidelines range would have jumped to between 33 and 41 months.)

At sentencing, the district court found that "something more than the 30- to 37-month guideline range [was] essential to achieve some of the purposes of sentencing" listed in 18 U.S.C. § 3553(a). Tr., R.41, PageID#188. It highlighted Lee's "very long history of problems with law enforcement," the seriousness of his prior incidents, and the failure of the prior "corrective interventions" to get Lee to follow the law. *Id.*, PageID#188–90. It imposed a 60-month sentence.

II

A

Congress has told district courts to consider several factors when sentencing a defendant, including the need to promote respect for the law, to generate sufficient deterrence, and to protect the public. 18 U.S.C. § 3553(a). The Supreme Court has made clear that "the Guidelines should be the starting point and the initial benchmark" for a sentence that meets these criteria. *Gall*, 552 U.S. at 49. The Sentencing Commission sets its ranges with "these same § 3553(a) objectives" in mind. *Rita v. United States*, 551 U.S. 338, 348 (2007). So they will "reflect a rough approximation of sentences that might achieve" the § 3553(a) objectives for similarly situated defendants. *Id.* at 350. Careful attention to the guidelines also helps achieve a systemic goal: to "avoid unwarranted sentence disparities" across defendants. 18 U.S.C. § 3553(a)(6); *Gall*, 552 U.S. at 54.

Yet the Supreme Court has also told district courts that they cannot end with the guidelines. After identifying the relevant range, a court "should then consider all of the § 3553(a) factors" and "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 49–50. This individualized inquiry allows the court to implement its own institutional advantage. The court will have "greater familiarity with . . . the individual case and the individual defendant . . . than the Commission or the appeals court." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (citation omitted). A district court's case-by-case

decisionmaking thus helps achieve a defendant-specific sentencing goal: the need to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Turning to the appeal, the Supreme Court has instructed appellate courts to consider only whether a district court's chosen sentence is "reasonable," applying an "abuse-of-discretion standard of review" for "all sentencing decisions—whether inside or outside the Guidelines range." *Gall*, 552 U.S. at 46, 49. Even when a district court varies from the guidelines, therefore, a "substantive reasonableness" claim like Lee's faces a "high bar." *United States v. Thomas*, 933 F.3d 605, 613 (6th Cir. 2019). An appellate court must "'give due deference to the district court's decision that the § 3553(a) factors' justify the variance." *Id.* (quoting *Gall*, 552 U.S. at 51).

A district court generally will vary from a guidelines range for one of two reasons. In some cases, a district court might find that a defendant's unique circumstances make the case fall "outside the 'heartland' to which the Commission intend[ed] individual Guidelines to apply." *Kimbrough*, 552 U.S. at 109 (quoting *Rita*, 551 U.S. at 351). This type of variance arises from an area (the specific facts) over which district courts have the most expertise. *Id.* So the variance "may attract greatest respect" on appeal. *Boucher*, 937 F.3d at 70 (quoting *Kimbrough*, 552 U.S. at 109). If the district court reasonably explains "what the Guidelines failed to take into account regarding" a specific defendant and specific offense, we generally have upheld the variance. *United States v. Gordon*, 793 F. App'x 375, 380 (6th Cir. 2019). In other cases, a district court might refuse to follow a guideline even in a mine-run case "based on a disagreement with the Commission's views" of proper sentencing policy. *Pepper v. United States*, 562 U.S. 476, 500 (2011). We will more closely scrutinize this type of policy-rooted variance because it falls outside the court's area of expertise. *United States v. Herrera-Zuniga*, 571 F.3d 568, 585 (6th Cir. 2009).

Applying this framework here, I would uphold Lee's 60-month sentence. The district court did not abuse its discretion when it varied upward from Lee's guidelines range (either 30 to 37 months based on the presentence report or 33 to 41 months based on the later-discovered offenses). The court found that the guidelines range was inadequate because of Lee's specific

history and characteristics. By providing fact-specific reasons, the district court imposed a variance that should "attract greatest respect" so long as the court adequately explained why Lee's case was not a mine-run one. *Boucher*, 937 F.3d at 708 (citation omitted).

The court adequately did so. Most notably, it explained that Lee had "a very long history of problems with law enforcement starting at age 12 and then being pretty steady right up until the present." Tr., R.41, PageID#188. Lee's consistent failure to follow the legal obligations imposed on him, the court reasoned, mandated an upward variance under several § 3553(a) factors, including the need to "promot[e] respect for the law and specific deterrence" as well as the need to provide "protection of the public." *Id.* This rationale for an upward variance is a common one: We have repeatedly held that a district court may vary upward based on a defendant's criminal history. We have, for example, upheld a variance when a defendant "was proceeding down the path of 'life on the installment plan,'" *Thomas*, 933 F.3d at 613 (15-month variance), or when the defendant's "criminal history category didn't capture the seriousness of his record," *United States v. Johnson*, 934 F.3d 498, 501 (6th Cir. 2019) (14-month upward variance).

Indeed, countless decisions have used a defendant's criminal history to uphold similar variances. *See, e.g.*, *United States v. Dunnican*, 961 F.3d 859, 880–81 (6th Cir. 2020) (21-month variance); *United States v. Williams*, 807 F. App'x 505, 509 (6th Cir. 2020) (20-month variance); *United States v. Hoff*, 767 F. App'x 614, 625–26 (6th Cir. 2019) (10-month variance); *United States v. Klyn*, 760 F. App'x 368, 371 (6th Cir. 2019) (12-month variance); *United States v. Howell*, 759 F. App'x 443, 445 (6th Cir. 2019) (21-month variance); *United States v. Wade*, 744 F. App'x 265, 266–67 (6th Cir. 2018) (42-month variance); *United States v. Trejo*, 729 F. App'x 396, 400 (6th Cir. 2018) (30-month variance); *United States v. Robinson*, 892 F.3d 209, 214 (6th Cir. 2018) (40-month variance); *United States v. Ritchey*, 729 F. App'x 389, 393–94 (6th Cir. 2018) (31-month variance); *United States v. Jozwiak*, 708 F. App'x 871, 874 (6th Cir. 2018) (15-month variance); *United States v. Monroe*, 684 F. App'x 467, 469–70 (6th Cir. 2017) (57-month variance); *United States v. Solano-Rosales*, 781 F.3d 345, 356 (6th Cir. 2015) (4-month variance); *United States v. Sherer*, 770 F.3d 407, 413 (6th Cir. 2014) (180-month variance); *United States v. Martinez-Rendon*, 454 F. App'x 503, 504, 508 (6th Cir. 2012)

(32-month variance); *United States v. Lanning*, 633 F.3d 469, 475–76 (6th Cir. 2011) (18-month variance); *Herrera-Zuniga*, 571 F.3d at 589–90 (18-month variance).

Lee's guidelines range also did not capture much of his criminal history—showing that he was not a typical defendant for whom the range would be the most appropriate. *See United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020). Lee, for example, did not receive any criminal-history points for his juvenile adjudications for involuntary manslaughter and armed robbery. As the district court explained, these were "very serious" offenses, one of which resulted in a lost life. Tr., R.41, PageID#189, 197. In addition, apart from the criminal-history points that Lee received for his sex offense, the court called "even more troubling" "the litany of parole violations and returns to custody [that] goes on for over a page" in his presentence report. *Id.*, PageID#189. While one or two of Lee's parole violations might have been factored into his guidelines range, many were not. When Lee was in prison, moreover, he received many prison-misconduct citations that were likewise not addressed by his guidelines range. This case thus is not like those in which a court relied generically on prior crimes that were already "counted" by the guidelines. *See United States v. Warren*, 771 F. App'x 637, 642 (6th Cir. 2019).

Turning to concerns with deterrence and protecting the public, the court next identified how previous "corrective interventions" had not "been very effective." Tr., R.41, PageID#197. Lee's consistent record of crimes, parole violations, and prison misconduct showed "somebody who has a significant problem conforming their behavior to the expectations of whoever is in authority." *Id.* Lee also made little effort to meet his sex-offender obligations. He, for example, failed to comply with the location-monitoring requirements or attend sex-offender treatment. And Lee's pattern of "committing new offenses or absconding from supervision" while "on parole already for a serious offense" meant that "when he's not in custody," "he's acting out and putting other people in the community at risk." *Id.*, PageID#189–90. The "nature and circumstances" of Lee's stolen-firearm offense also set it apart from a mine-run case. 18 U.S.C. § 3553(a)(1). He was not simply walking around with a stolen gun. He had absconded from parole, attempted to flee the arresting officers, and struggled with them when they tried to apprehend him.

All told, I may or may not have imposed a different sentence if I had been the sentencing judge.  But the fact that an appellate court "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.  Because the district court provided rational reasons why Lee's case fell outside the "mine-run" case, I see no abuse of discretion in its upward variance. *Boucher*, 937 F.3d at 708.

III

A

My colleagues assert that the district court abused its discretion by relying on Lee's prior criminal history both because no relationship existed between that prior history and Lee's current offense and because the guidelines already accounted for much of that history.  Neither reason justifies overturning Lee's sentence.

*Relationship Requirement*.  My colleagues create a new requirement for upward variances tied to a defendant's criminal history: In cases like this one, there must be a "meaningful relationship" between the current offense and a defendant's prior convictions in order for a district court to vary upward based on those prior convictions.  Maj. Op. 7.  Because there was an insufficient relationship between Lee's prior criminal misconduct and his current stolen-firearm offense in this case, the majority concludes, the district court could not rely on that prior misconduct to vary upward.  This new relationship requirement—one that Lee himself did not request in his briefing—contradicts both statutory text and judicial precedent.

Section 3553(a)'s text nowhere contemplates this meaningful-relationship requirement. The statute directs district courts to consider such things as the need to "promote respect for the law," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A)–(C).  Use these factors to compare two hypothetical defendants who have committed drug-distribution offenses.  The first defendant has two prior drug-distribution convictions; the second has three prior convictions for rape, aggravated assault, and armed bank robbery.  If a sufficient relationship were required, a district court sentencing the first defendant could use the prior drug convictions to vary upward for the current drug offense because all of the offenses involved drugs.  But the court sentencing the

second defendant could not use the prior violent crimes to vary upward because those crimes were unrelated to the drug offense. I must confess I do not see how this distinction comports with § 3553(a). The second defendant clearly poses a greater risk of harm to the public. *Id.* § 3553(a)(2)(C). That defendant has also committed more crimes and so has shown a greater disrespect for the law. *Id.* § 3553(a)(2)(A). The deterrence factor also considers the need to deter the defendant's "criminal conduct" generally—not the need to deter the specific type of crime that the defendant has committed. *Id.* § 3553(a)(2)(B). And while specific deterrence may justify an upward variance, it is not the *only* deterrence-based reason for doing so. Indeed, I think it would risk "unwarranted sentence disparities" to conclude that a district court may vary upward for the first defendant but not for the second one. *Id.* § 3553(a)(6).

Our precedent also precludes any meaningful-relationship mandate. Contrary to the majority's holding in this case, our overwhelming case law (which I cite above) has upheld upward variances based on a defendant's criminal history. I readily agree that some cases have noted the relationship between at least some of the prior offenses and the current conviction when allowing a district court to vary upward. That this type of relationship is a *sufficient* condition for an upward variance, however, does not make it a *required* one (in this case or in any other). And I have found no decision that includes any statement suggesting that a district court *must* identify this relationship before making an upward variance. To the contrary, we have approved a district court's reliance on prior crimes even when there was no obvious relationship between those crimes and the current offense. Take *Howell*. There, the defendant conspired to defraud businesses of money. 759 F. App'x at 444. The district court imposed a 72-month sentence, 21 months above the guidelines range, based primarily on unrelated crimes. *Id.* at 444–45. The defendant had previously committed drug offenses, domestic-violence offenses, and a firearms offense, not financial fraud. *Id.* at 445. Or consider *Klyn*. There, we did not even identify the defendant's prior crimes, noting merely that a variance was justified based partially on his "criminal proclivities." 760 F. App'x at 371; *see also, e.g.*, *Williams*, 807 F. App'x at 509; *United States v. Heard*, 749 F. App'x 367, 370 & n.1 (6th Cir. 2018).

Regardless, I would find that a sufficient relationship exists between Lee's stolen-firearm offense and his prior offenses—at least if we consider the "circumstances" of the firearm

offense. 18 U.S.C. § 3553(a)(1). Recall that when the police found Lee in possession of this stolen firearm, they were executing a warrant for his arrest because he had absconded from parole. Lee also struggled with the police during this arrest. As the district court explained, his behavior in this case falls within a 15-year pattern of Lee refusing to follow basic legal conditions imposed on him. He had twice previously absconded from parole and had also repeatedly fled from or resisted arrests for parole violations. In short, his behavior in this case, like his prior behavior, "suggests somebody who has a significant problem conforming their behavior to the expectations of whoever is in authority." Tr., R.41, PageID#189. If anything, this offense shows that his criminal behavior has *escalated*. Rather than merely absconding from parole and resisting arrest, he absconded from parole and resisted arrest with a stolen firearm.

*Criminal History in the Guidelines*. My colleagues also criticize the district court for varying upward because the Sentencing Guidelines already use a defendant's criminal history when calculating the guidelines range. Maj. Op. 12–13. I see several problems with this critique. Start with precedent. "We have consistently rejected . . . arguments that a district court cannot impose upward variances based on criminal history, simply because the Guidelines calculation already accounts for criminal history as a factor." *Dunnican*, 961 F.3d at 881. We have instead found it "eminently reasonable to weigh a defendant's criminal history and the efficacy of prior sentences when selecting the appropriate sentence, regardless of whether it is within or above the Guidelines range." *United States v. Sanbria-Bueno*, 549 F. App'x 434, 441 (6th Cir. 2013).

Turn to the facts. The district court did not rely only on prior crimes that were *already* used to calculate Lee's guidelines range. It relied on prior conduct that did not go into calculating his guidelines range. Lee's two juvenile adjudications, some of his adult crimes, and many of his parole violations did not add points to his criminal-history score.

In any event, what is wrong with a district court concluding that the guidelines calculations do not fully account for a defendant's extensive criminal record? Consider our jurisprudence on acquitted conduct. The Sentencing Guidelines often require district courts to rely on this conduct to *increase* a sentence. *See, e.g.*, U.S.S.G. § 1B1.3 (2015); *see also United States v. Watts*, 519 U.S. 148, 156 (1997). Yet we have noted that a district court may

reasonably use the § 3553(a) factors to vary downward and thus negate this enhancement. *See United States v. White*, 551 F.3d 381, 386 (6th Cir. 2008) (en banc); *cf. United States v. Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015) (Kavanaugh, J., concurring). If a district court may vary *downward* based on a disagreement with how the Sentencing Guidelines use acquitted conduct, I fail to see why the same court cannot vary *upward* based on a disagreement with how the Sentencing Guidelines use criminal history. The same principle that allows the first choice necessarily allows the second one: discretion.

B

Lee, by comparison, asserts three different challenges to the upward variance. *First*, Lee argues that the district court ignored his version of the facts underlying his involuntary-manslaughter adjudication. The death was not the result of violent conduct, Lee asserts, but of "adolescent horseplay." Yet the district court did consider Lee's "defense theory" that "hey, it was just, you know, kids, horseplay in the water and somebody lost their life." Tr., R.41, PageID#189. It simply did not find that explanation sufficient to ignore this adjudication *altogether*. The court recognized that even under Lee's version "the record reflects a very serious conviction already at that tender age of 12." *Id.* Lee thus turns to the notion that the district court gave "too much weight" to the adjudication. Not so. It explained that the upward variance "certainly [did not] rest in any way exclusively on" the adjudication; "[t]hat's just part of it." *Id.*, PageID#197. The court added: "It happen[ed] to be the first conviction or juvenile adjudication" in Lee's criminal history, but it was soon followed by the armed-robbery adjudication, which the district court considered to be "a very serious juvenile adjudication." *Id.* The district court did not abuse its discretion in treating this aspect of Lee's history as one ingredient in the larger recipe requiring a variance.

*Second*, Lee notes that he was shot in the head in 2001 before much of his criminal history. This injury allegedly caused him to suffer from post-traumatic stress, depression, and anxiety. Lee's counsel conceded at oral argument that he is aware of no diagnoses of mental illness. He argues, however, that the district court gave inadequate weight to how his mental-health conditions caused some of his criminal record. Here again, the district court *did* consider the impact of this injury. It simply did not agree that the injury explained Lee's lengthy criminal

history: The gunshot "happened well after this pattern began.  It may have contributed to it, may have made it worse. . . . But I don't think it explains everything we see in the record."  *Id.*, PageID#198.   The involuntary-manslaughter and armed-robbery juvenile adjudications, for example, occurred in 1993 and 1996, well before 2001.  And the district court was not required to disregard Lee's later criminal history simply because Lee suffered that head injury.

More significantly, Lee argues that the district court imposed the upward variance because of the mental illness that Lee says resulted from the injury.  Our cases bar a district court from relying on mental-health concerns to increase a sentence.  *See, e.g.*, *United States v. Arnold*, 630 F. App'x 432, 437 (6th Cir. 2015).  But Lee incorrectly suggests that the district court imposed the variance *because of* his mental illness.  The district court here, unlike in *Arnold*, did not increase Lee's sentence to provide time for lengthy mental-health treatment.  *Id.* at 434–35.  To the contrary, it mentioned Lee's mental health only once when it required Lee to participate in a program of mental-health treatment as part of his supervised release, a condition that Lee does not challenge.

*Third*, Lee argues that the district court "misconstrued" his Michigan sex offense "as a basis for departing upward."  He takes issue with the district court's description of that offense as "troubling."  Tr., R.41, PageID#189.  But even crediting Lee's current account of the events, Lee still engaged in consensual oral sex with a 14-year-old girl when he was 21.  (His contemporaneous account was that he had been drinking alcohol and could not remember whether he had engaged in sexual intercourse with her, something that she told police he had done.)  The district court did not abuse its discretion in concluding that this offense was "troubling" even under Lee's account.  The court could treat it as one more example of a continued pattern warranting an upward variance.

\* \* \*

In the end, I return to where I started.  It is worth debating whether our sentencing laws should favor treating like individuals alike or considering all of a person's unique circumstances.  But, under our deferential standard of review, the Supreme Court has reserved this debate largely for the district courts.  Applying that standard, I find ample grounds for the district court's

upward variance in this case. Many decisions have upheld similar "criminal history" variances. And our refusal to follow these decisions risks creating the very "unwarranted sentence disparities" that my colleagues rightly seek to avoid. 18 U.S.C. § 3553(a)(6). A disparity now exists between Lee and the many other defendants who did not have their variances reversed. I respectfully dissent.