NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0168n.06l.

**Case No. 20-5320**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 30, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| DUSTIN SHAWN STANTON, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: COLE, Chief Judge; STRANCH and THAPAR, Circuit Judges.

COLE, C.J., delivered the opinion of the court in which STRANCH, J., joined. THAPAR, J. (pp. 11–16), delivered a separate dissenting opinion.

COLE, Chief Judge. Dustin Stanton challenges his 108-month sentence for one count of unlawful possession of a firearm as substantively unreasonable. Stanton argues that the district court did not provide sufficiently compelling reasons to justify nearly tripling his maximum guideline sentence of 37 months. We agree.

## I. BACKGROUND

In November 2018, officers of the Metropolitan Nashville Police Department (MNPD) attempted to serve five felony arrest warrants on Dustin Stanton at his suspected residence. Upon hearing the officers calling him, Stanton fled on foot through neighboring yards, discarding a

firearm as he ran. MNPD officers quickly caught Stanton and recovered an out-of-state handgun ten feet from where he was arrested. At the time of his arrest, Stanton, age 37, had eight prior felony convictions. He was charged with and pleaded guilty to one count of knowing possession of a firearm by a felon (18 U.S.C. §§ 922(g)(1), 924).

As part of Stanton's plea deal, the government agreed to recommend a sentence at the low end of the Guidelines range to run concurrently with any sentence from his pending state charges. Based on a Criminal History Category ("CHC") of VI, the highest level, Stanton's presentence investigation report ("PSR") calculated a guideline sentence range of 30 to 37 months. He received an offense-level reduction for acceptance of responsibility. The PSR noted no other enhancements, reductions, or recommended departures. As promised, the government recommended a 30-month sentence in its sentencing memorandum, though it also noted for the district court that it believed Stanton was a chronic offender who would not be deterred by this lower-end sentence.

At the March 2020 sentencing hearing, neither party objected to the PSR and the district court accepted it as true. Stanton addressed the court, expressing remorse for his actions and discussing the difficult circumstances of his youth, with an abusive father and without a permanent home. Stanton's counsel further highlighted the key role of crack cocaine addiction in Stanton's life, to which Stanton was first exposed as a young teenager. In explaining its sentence, the court noted these mitigating factors, but declined to give them significant weight. The court reasoned that, at age 37, Stanton needed to take ownership for his continued conduct and noted that, even though Stanton's criminal offenses were fueled by addiction, Stanton had declined to take advantage of multiple drug rehabilitation opportunities in the past.

In weighing the § 3553(a) sentencing factors, the court acknowledged that Stanton had not used his firearm against anyone in the instant offense, but nonetheless emphasized that his crime

was "serious" and noted that Stanton fled from law enforcement. (Sent. Hr'g Tr., R. 42, PageID 146.) It also noted "somewhat of a need" to protect the public. (*Id.* PageID 149.) But the district court's foremost concern was "specifically deterring [Stanton]" from future offenses, a concern which it found the guideline sentence did not adequately address. (*Id.* PageID 149–50.) The court stressed that Stanton's criminal behavior seemed largely unchanged since 2008 when he was last sentenced for the same firearms offense. "I did look at the sentence that [District] Judge Trauger gave you of 84 [months]," the court explained. "And the government's right. That didn't deter you at all." (*Id.* PageID 150.)

The district court's separate statement of reasons reflects this primary concern with a need to deter Stanton based on his extensive criminal record and his recommitting a second felon in possession offense. The court thus concluded that a sentence of 108 months was appropriate, to run concurrently with any sentence Stanton might receive on his pending state charges. This represented a 191% upward variance from Stanton's maximum guideline sentence (37 months).

Stanton timely appealed. His sole claim before us is that his sentence is substantively unreasonable.

## II.  ANALYSIS

### A.  Standard of Review and Legal Framework

The substantive reasonableness of a district court's sentence is reviewed for abuse of discretion. *United States v. Lanning*, 633 F.3d 469, 473 (6th Cir. 2011). The inquiry focuses on whether the sentence is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Solano-Rosales*, 781 F.3d 345, 356 (6th Cir. 2015) (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008)). The district court's sentencing decision is "a matter

of reasoned discretion, not math," warranting "highly deferential review." *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019) (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2014)). This discretion "is not, however, without limit." *Boucher*, 937 F.3d at 708. For instance, a sentence is substantively unreasonable if "the court placed too much weight on some of the § 3553(a) factors and too little on others." *Id.* at 707.

The Sentencing Guidelines remain the "starting point for substantive reasonableness review" because "in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal quotation marks omitted)). A sentence outside of the Guidelines range receives no presumption of reasonableness, *United States v. Herrera-Zuniga,* 571 F.3d 568, 582 (6th Cir. 2009), and it must be supported by "a justification [that] is sufficiently compelling to support the degree of variance," *Perez-Rodriguez*, 960 F.3d at 754 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). "The greater the variance, the more compelling the justification must be." *Id.*; *see also Gall*, 552 U.S. at 50. This is in part because "the need to avoid unwarranted sentencing disparities" (§ 3553(a)(6)) lies at the core of Congress's statutory sentencing scheme. *See Boucher*, 937 F.3d at 708; *see also United States v. Lightning*, 835 F. App'x 38, 43 (6th Cir. 2020).

## B. Merits

In 2019, the median upward variance for federal firearms offenses was 35.2%. U.S. Sent. Comm'n, *2019 Annual Report and Sourcebook of Federal Sentencing Statistics* 97 tbl.36 (2019).[1]

---

[1]    *Available    at*    https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report-and-Sourcebook.pdf.

In this context, Stanton's variance of 191% is extraordinary. The district court provided two primary and related reasons for varying so far above the guideline range. Both focused on the need to specifically deter Stanton from further criminal conduct (§ 3553(a)(2)(B)) in light of his history and characteristics (§ 3553(a)(1)). We conclude that, though potentially adequate to support some upward variance, the district court's stated reasons do not provide a sufficiently compelling justification for a variance of this magnitude.

### a. Justification 1: Continued recidivism

The district court explained that Stanton's extensive criminal history and recidivism demonstrated a "lack of respect for the law," specifically regarding unlawful possession of a firearm. (Sent. Hr'g Tr., R. 42, PageID 146.) Though a defendant's "criminal record" alone is "usually not a proper reason for a variance," *Boucher*, 937 F.3d at 711, when he repeatedly commits the same type of offense, this specific-offense recidivism may justify varying upward. *See United States v. Lee*, 974 F.3d 670, 677–79 (6th Cir. 2020); *see also United States v. Johnson*, 934 F.3d 498, 499–500 (6th Cir. 2019) (upholding 30% upward variance for fifth firearm conviction, which occurred two days after release from custody for the previous firearms offense).

But, as we have previously held in similar firearms cases, specific-offense recidivism, without more, cannot justify an "extreme" variance like Stanton's. *See United States v. Warren*, 771 F. App'x 637, 642–43 (6th Cir. 2019). In *Warren*, the defendant—also charged with a § 922(g) violation—had committed multiple previous firearm-related offenses, some of which involved discharging the gun. 771 F. App'x at 638–39. Citing the defendant's incessant criminal activity and the need to protect the community from gun violence, the district court imposed a 90% upward variance. *Id.* at 638–40. We reversed, finding that though unremittent recidivism might support some upward variance, it could not on its own justify nearly doubling the maximum

guideline sentence. *Id.* at 643; *see also Lightning*, 835 F. App'x at 42–43 (reversing as substantively unreasonable an upward variance of almost 225% on a § 922(g) charge for a nonviolent defendant in CHC VI based solely on his substantial record of unlawful firearm possession).

In contrast, when we have upheld above-Guidelines sentences based primarily on the defendant's specific-offense recidivism, the variances have been much smaller. *See, e.g.*, *Johnson*, 934 F.3d at 499–500 (30% upward variance); *United States v. Dunnican*, 961 F.3d 859, 881 (6th Cir. 2020) (17%); *United States v. Sims*, 800 F. App'x 383, 386–87 (6th Cir. 2020) (45%); *United States v. Harris*, 817 F. App'x 116, 117–19 (6th Cir. 2020) (51%). And where we have upheld variances of a significantly greater magnitude, those higher sentences rested additionally on the Guidelines' failure to capture the seriousness of the defendant's offense conduct. In *United States v. Rayyan*, for instance, we affirmed a 186% upward variance because the defendant's 21-month maximum guideline sentence greatly understated the gravity of his two nonviolent firearms offenses. *See* 885 F.3d 436, 439–43 (6th Cir. 2018). There, the defendant had proclaimed his admiration for ISIS and terrorist violence on social media and expressed to a confidential informant his regret at not having carried out a church shooting he had previously planned. *See id.* Here, the district court offered no comparably compelling reasons why Stanton's conduct warranted such a variance.

Or in *United States v. Heard*, we upheld a 111% upward variance, more than double the guideline maximum, for unlawful firearm possession when the defendant's previous nine-year sentence for a firearms offense did not deter him. 749 F. App'x 367, 370, 374–75 (6th Cir. 2018). But in *Heard* this drastic variance rested substantially on the defendant's repeat violent conduct. His prior offense was a violent shooting that injured two people, and his present offense involved

discharging the firearm multiple times during an altercation. *See id.* In contrast, Stanton's variance—nearly *triple* the guideline maximum—rests on a ten-year-old firearms offense that (though undoubtedly serious) left no one injured and on the present offense where Stanton did not fire his gun at all.

### b. *Justification 2: Previous length of imprisonment for the same offense*

The court also reasoned that, because Stanton's previous sentence of 84 months on the same firearms charge did not deter him from re-offending, a higher sentence was required for the repeat offense. We have upheld above-Guidelines sentences under this rationale before. *See, e.g.*, *United States v. Nixon*, 664 F.3d 624, 626 (6th Cir. 2011) (affirming upward variance from the 37-month guideline maximum in part because the defendant's prior 36-month sentence did not deter him from committing the instant, related offense). But in no case that the government cites have we done so for a variance of this magnitude. *Cf. id.* (upholding 62% upward variance); *Harris*, 817 F. App'x at 119 (51%); *United States v. Umanzor-Pleytes*, 598 F. App'x 433, 434–35 (6th Cir. 2015) (per curiam) (50%). While a prior sentence for the same offense may inform the district court's sentencing analysis, it does not displace the fundamental precept that "[t]he greater the variance, the more compelling the justification must be." *Perez-Rodriguez*, 960 F.3d at 753–54.

Nor is a prior sentence an appropriate baseline from which to assess the reasonableness of a variance when that prior sentence stemmed from now-outdated Guidelines, as it did here. Stanton's 84-month sentence in 2008 was based on a guideline range of 130 to 162 months, drastically higher than his current range of 30 to 37 months for the same offense. This significant difference resulted from revisions to the Guidelines in 2015, which removed burglary from § 4B1.2's enumerated list of "crime[s] of violence." *See* U.S.S.G Amend. 798 (2015).[2] Thus,

---

[2] *Available at* https://www.ussc.gov/guidelines/amendment/798.

whereas in 2008 Stanton received a substantial offense-level increase for two prior burglary convictions that were considered crimes of violence, *see* U.S.S.G. § 2K2.1(a)(2), in 2020 this increase no longer applied. It is the current Guidelines, not the old ones, that should "anchor[]" the district court's sentencing discretion. *See Peugh v. United States*, 569 U.S. 530, 549 (2013). And these Guidelines revisions are particularly apt in Stanton's case, given that neither of his aggravated burglary convictions appear to have involved violent conduct. Therefore, contrary to the dissent's suggestion (Dissent 4–5), we must review Stanton's 108-month sentence not as a moderate upward variance from his previous 84-month sentence, but as a drastic one from his current 37-month guideline maximum. That his prior sentence did not deter him from recommitting the same offense does not, without more, justify varying upward to such an extent.

*c. Stanton presents a "mine-run" case*

The government additionally argues that the district court's variance should be entitled to the "greatest respect" because Stanton does not present a "mine-run" felon-in-possession case. *See Herrera-Zuniga*, 571 F.3d at 582 (quoting *Kimbrough*, 552 U.S. at 109). We are not persuaded.

Stanton's serious and extensive criminal record—the district court's chief concern—is not abnormal among firearms offenders in CHC VI. *See, e.g.*, U.S. Sent. Comm'n, *The Criminal History of Federal Offenders* 5 (2018)[3] (federal firearms offenders across *all* CHCs are more "likely to have previous convictions in their criminal histories," including drug possession and larceny); U.S. Sent. Comm'n, *Recidivism Among Federal Firearms Offenders* 20 (2019)[4] (federal firearms offenders recidivate more than non-firearms offenders across all CHCs and those in CHC VI have a *further* recidivism rate of 85.2%). Additionally, we disagree that the circumstances of

---

[3] *Available at* https://www.ussc.gov/research/research-reports/criminal-history-federal-offenders.

[4] *Available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf.

Stanton's offense are "more serious than the typical felon-in-possession case" (*contra* Appellee Br. at 13). Stanton's offense was nonviolent, and his flight from the police "[is] not unusual or abnormal for defendants charged with possession of a stolen firearm," *Lee*, 974 F.3d at 677 n.6.[5] Thus, nothing in the district court's stated reasoning persuades us that Stanton's offense falls outside the "heartland" of cases for which the Guidelines were intended. *See Perez-Rodriguez*, 960 F.3d at 754; *see also Lightning*, 835 F. App'x at 41–42 (finding that a defendant in CHC VI committed a "mine-run" § 922(g) offense despite his extensive criminal record, including several prior firearms offenses).

\* \* \*

In sum, based on the reasons it provided at sentencing, the district court "placed too much weight on the § 3553(a) factors concerning criminal history [and] deterrence . . . without properly considering sentencing disparities." *See Perez-Rodriguez*, 960 F.3d at 758. "By 'relying on a problem common to all' defendants within the same criminal history category as [Stanton]—that is, that they have an extensive criminal history—the district court did not give a sufficiently compelling reason to justify [its extreme variance]." *Warren*, 771 F. App'x at 642 (quoting *United States v. Poynter*, 495 F.3d 349, 354 (6th Cir. 2007)). Though Stanton's continued recidivism and his previous 84-month sentence for the same crime may ultimately warrant an upward variance, they are not—without more—sufficiently compelling justifications for nearly tripling his maximum guideline sentence for a mine-run offense. *See Boucher*, 937 F.3d at 714 (vacating

---

[5] The government and the dissent further emphasize that, at the time of his arrest, Stanton was wanted pursuant to multiple Tennessee felony indictments. The district court, however, made no specific findings regarding those pending state charges at sentencing and did not rely on them to justify its variance. Nor did the government discuss the charges in its sentencing briefing or at the sentencing hearing. Thus, to the extent the government seeks to tie specific conduct underlying the state charges to Stanton's firearms offense, it is not for us to make that factual finding in the first instance. And to the extent the government relies on the pending charges to argue that Stanton's continued recidivism is atypical, for the reasons discussed above, the argument is not persuasive.

sentence as substantively unreasonable and noting that "after the district court reweighs the relevant § 3553(a) factors" the defendant "may or may not be entitled to a" variance).

## III.  CONCLUSION

For the foregoing reasons we reverse the judgment of the district court, vacate Stanton's sentence, and remand for resentencing.

**THAPAR, Circuit Judge, dissenting.** District judges are not at liberty to turn a blind eye to reality at sentencing. Instead, the sentencing factors in the United States Code *require* judges to consider the real-world consequences of a prison term. Will the sentence protect the public? Will it deter the defendant? What does a defendant's criminal history tell the court about his likelihood of recidivism? Are there positive factors that might cut the other way?

The sentencing guidelines help answer these questions. But district judges understand better than most that the guidelines are not binding for a reason: They don't fit every case. Especially one like Dustin Stanton's.

Here, a conscientious district judge had a violent, repeat offender in front of him. The last time Stanton was in federal court, Judge Waverly Crenshaw's colleague sentenced him to 84 months. Barely a year after his release, Stanton was back—as violent as ever, and for the same offense. So Judge Crenshaw did what good judges do. He balanced the sentencing factors and came up with a fair sentence: 108 months. I respectfully dissent from making him do it again.

\* \* \*

Violent criminals usually deserve long sentences. Dustin Stanton has proven that. In his short life, he has terrorized many victims. In one particularly disturbing incident, he pointed a gun at his girlfriend. She begged him not to shoot because there was a baby in the house. But he responded, "I don't give a f--- about no baby" and shot twice.

To call him a recidivist is to put it mildly. Here is a chronological sample of Stanton's adult criminal history (leading up to the shooting):

- While under a suspended sentence for drug possession, Stanton stole a van and fled from police.
- Three months later (while on probation for the last offense), Stanton burglarized a home.
- One week later (and just days after finishing a sentence for another drug crime), he stole another vehicle and fled from police.

- Four months after finishing a sentence for aggravated burglary, Stanton was convicted of a new count of criminal trespass.
- Just three months later he shot at his girlfriend.

One week after shooting at his girlfriend, Stanton committed the acts that triggered his first federal prosecution. Stanton stole a truck and burglarized a house. When the police caught up, he led them on a car chase. The chase ended at a gas station where Stanton's brother (and accomplice) attacked a woman and tried to steal her car. Police arrested Stanton and his brother and later recovered two rifles from the scene. Two days later, police found in the woods the pistol Stanton had used to shoot at his girlfriend.

Stanton pled guilty to being a felon in possession. And Judge Aleta Trauger sentenced him to 84 months in prison (a below-guidelines sentence).

To say an 84-month sentence did not change his lifestyle is an understatement. Four days after being let out on supervised release, Stanton broke into another truck and stole property valued at over $3,000. Two weeks after that, Stanton stole yet another car. Four months later, Stanton burglarized four businesses in nine days. After this final incident, Judge Trauger revoked his supervised release and sentenced him to the maximum—24 months.

Just a few months after his 24-month prison term expired, Stanton engaged in his latest crime spree. He allegedly committed three carjackings *in one day*. He fired a gun in one of the carjackings and pointed a gun at victims in the other two. Stanton ended this crime spree by ramming two police cruisers, one of which had a K-9 inside. When police tried to arrest Stanton, he fled on foot and discarded a pistol along the way.

Once again, he pled guilty to being a felon in possession. But the guidelines had changed since Stanton's first felon-in-possession conviction. Previously, his guidelines range was 130 to

162 months. But now, the range is only 30 to 37 months.[*] That's just a few months more than what he had just served for violating supervised release.

So when it came time for sentencing, Judge Crenshaw realized a guideline sentence was not sufficient to stop Stanton from continuing to terrorize the public. *See* 18 U.S.C. § 3553(a)(2)(C). Indeed, Stanton's criminal conduct has grown increasingly violent and brazen over time. And he has committed nearly all of his crimes while on probation or supervised release for earlier offenses—often within days of finishing a prison term or committing another serious crime. What's more, the above discussion of Stanton's criminal history does not include his juvenile conduct (which was serious and lengthy), his non-felony conduct, or the additional crimes he has committed in prison. In short, the violent nature of Stanton's crimes, coupled with his outright defiance of the law, justified an upward variance.

But there was another reason to vary upwards: The clear need for deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). His first felon-in-possession charge earned him 84 months. That sentence did nothing to stop his criminal activity: He was back to committing crimes within days of being released. And soon after, he racked up a brand-new felon-in-possession charge. District judges routinely (and justifiably) impose a longer sentence on a criminal defendant's second trip to federal court—especially when it is for the same offense. And Judge Crenshaw had another reason to impose a longer sentence on Stanton in particular: "[I]t's important to specifically deter you because I feel like if I don't, the next 37 years of your life may not be productive and may not really support the son you've brought into the world." R. 42, Pg. ID 149.

---

[*] At sentencing for his first felon-in-possession offense, Stanton qualified for a higher base offense level because his prior state convictions for aggravated burglary counted as crimes of violence. The Sentencing Commission has since amended the guidelines to remove aggravated burglary from the enumerated list of violent crimes. *See* U.S.S.G. App. C, amend. 798 (2015). Because of that amendment, Stanton's base offense level is far lower in this case, even though he committed the same crime and has a worse criminal history.

The rest of Judge Crenshaw's explanation was equally judicious. He cited the need for a sentence that addresses Stanton's manifest disregard for the law. *See* 18 U.S.C. § 3553(a)(2)(A). He explained that the sentence would provide Stanton a chance to seek substance-abuse and mental-health treatment while in prison. *See* 18 U.S.C. § 3553(a)(2)(D). And he noted that nothing had changed since Judge Trauger had sentenced him. Indeed, he quoted Judge Trauger's list of negatives and noted they all remained true today.

The majority correctly points out that a district judge's sentencing decision warrants "highly deferential review." Maj. Op. 4. But then it says that Judge Crenshaw failed to provide a sufficiently compelling reason for his variance. What else must a district judge say—especially when the criminal history reveals so much? The majority doesn't tell us.

Could the district judge have gone through each of the sentencing factors and pointed out in minute detail why they supported a 108-month sentence? Sure. But our caselaw does not require judges to do so.

Indeed, we have said that a "district court does not commit reversible error simply by attaching great weight to a single factor." *United States v. Zobel*, 696 F.3d 558, 571 (6th Cir. 2012) (cleaned up). For example, we have previously upheld an above-guidelines sentence based largely on the need to protect the public. *Id.* In another case, we affirmed a sentence 76% above the guidelines range, imposed in part because the district judge was "appalled" that the victims were the defendant's own family members and close friends. *United States v. Thomas*, 437 Fed. App'x 456, 458 (6th Cir. 2011). Finally, in another case, we held that an 83% increase was justified to deter the defendant from further criminal activity and protect the public. *United States v. Baines*, 651 Fed. App'x 411, 412–14 (6th Cir. 2016). Although the guidelines range is one factor district

judges must consider at sentencing, we normally respect a district judge's conclusion that other factors predominate in a particular case.

But all this talk of percentages puts form over substance. Since Stanton does not challenge his sentence as procedurally unreasonable, it is the substance of his sentence that matters. The reality is that 84 months did nothing to deter Stanton from returning to a life of violent crime. Was a district judge really supposed to sentence him to *less* time the second time around? And if percentages are what count, the length of Stanton's new federal sentence was only a 29% increase from his last one.

The majority's chief complaint is that the district court should have given a better explanation for the sentence it imposed. But that speaks to procedural reasonableness. *See Gall v. U.S.*, 552 U.S. 38, 51 (2007). "Substantive reasonableness," by contrast, "focuses on whether a 'sentence is too long (if a defendant appeals) or too short (if the government appeals).'" *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)). A district court's explanation alone, even if threadbare, cannot turn a *substantively* reasonable sentence into an unreasonable one. True, the district court's explanation may help the reviewing court understand "whether the length of the sentence is greater than necessary to achieve the sentencing goals," or whether the district court "placed too much weight on some . . . factors and too little on others." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010); *Parrish*, 915 F.3d at 1047. But here, the reason for the district court's variance is apparent: A sentence within the guidelines would be *shorter* than Stanton's previous sentence for felon-in-possession, and thus offer little deterrence value (or protection to the public). By increasing Stanton's sentence modestly over his last conviction for the same offense, the district court did not impose a substantively unreasonable sentence.

One final point. On remand, Judge Crenshaw should specifically consider whether Stanton's felon-in-possession sentence should run consecutively with his state court sentence. *See United States v. Thomas*, 822 Fed. App'x 381, 385–87 (6th Cir. 2020). After all, the carjackings were committed the day before. And if, as the majority holds, Stanton's carjackings aren't enough to justify an upward variance in his federal sentence, then shouldn't the separate crimes at least deserve separate time? To be clear, I am not faulting the district court for its decision to run the sentences concurrently. But given the vacatur of the original sentence, the district court ought to take a fresh look at this issue too.

* * *

Fair sentencing is a key goal of our criminal justice system. The sentencing guidelines help further that goal. Still, district judges must exercise independent judgment when imposing a sentence. Sometimes the reality of a case justifies a variance downward. Sometimes, it justifies the opposite. Here, Judge Crenshaw decided that Stanton's case called for an upward variance. That decision was reasonable. Thus, I respectfully dissent.