NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0670n.06

No. 09-6017

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Sep 14, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| GORDON B. GRIGG, | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE: MARTIN, NORRIS, and SILER, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Defendant Gordon Grigg operated a Ponzi scheme. He pleaded guilty to wire and mail fraud charges, and received a sentence of 120 months of imprisonment, which was above the advisory guidelines range. On appeal, he raises four issues: 1) whether his sentence was substantively unreasonable; 2) whether the district court improperly enhanced his sentence because of his use of religion to defraud others; 3) whether the district court plainly erred by failing to put under oath the victims who testified at his sentencing; and 4) whether the district court plainly erred by failing to give advanced notice that he could receive a sentence above the guidelines range. For the reasons that follow, we affirm the district court's judgment.

**I.**

According to the Presentence Report ("PSR"), defendant was an investment advisor and self-styled "life and financial coach." Between 1996 and early 2009, he obtained money from clients by

falsely promising to purchase safe investments that had a high rate of return. However, he used the money for his own personal benefit and to pay out fictitious earnings to other "clients," a classic Ponzi scheme. In order to conceal his fraud, he created fictitious account statements, stock purchase confirmations, and invoices. He also falsely claimed to have partnerships and special business relationships with well known investment firms. Defendant's undoing came when he offered investments "guaranteed" by the federal government's Troubled Assets Relief Program. An investor became suspicious and reported defendant to the Securities and Exchange Commission, which launched an investigation and eventually initiated a civil proceeding against the defendant. He was criminally charged with four counts of mail fraud, four counts of wire fraud, and one forfeiture allegation. He pleaded guilty to all counts. The plea agreement stipulated that his sentencing guidelines range would be 78-97 months of imprisonment.

Pursuant to the Crime Victims' Rights Act of 2004 ("CVRA"), 18 U.S.C. § 3771(a)(4), several victims addressed the district court at sentencing. Some of them related that defendant had used professions of Christian religious faith to gain their trust. Clients also testified that he comforted them in times of personal hardship. After considering the sentencing factors contained in 18 U.S.C. § 3553(a), the district court imposed 120 months of incarceration. The district court cited two aggravating factors that led it to impose an upward variance: 1) defendant's preying on vulnerable individuals in difficult periods of their lives and 2) his use of religion to gain his victims' trust.

**II.**

*1. Substantive Reasonableness*

Defendant challenges the substantive reasonableness of his sentence. We apply a deferential abuse of discretion standard, regardless of whether counsel contemporaneously objected to the reasonableness of the sentence. *United States v. Houston*, 529 F.3d 743, 755 (6th Cir. 2008). Defendant carries the burden of showing that the sentence imposed represented an abuse of discretion. *Id*. at 756. A sentence is substantively unreasonable when the district court bases it on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor. *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008) (citing *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006)). There is no presumption *against* a sentence that falls outside of the guidelines range. *Id*. at 469-70.

Defendant does not dispute that the district court considered the relevant § 3553(a) factors, but nevertheless states that he should have received a sentence within the guidelines range. He particularly faults the district court in three respects. First, he criticizes the district court's conclusion that he preyed on vulnerable individuals, contending that his victims were of average or above-average intelligence and commanded enough personal assets to be considered sophisticated investors. This line of argument mischaracterizes the district court's reasoning; it never claimed that the victims were vulnerable because of their intelligence or financial status. Instead, the victims' statements indicated that defendant preyed on those who were disabled and in physical pain,[1] or were emotionally vulnerable due to a child's hospitalization. (Sentencing Tr. at 19-20). The district court

---

[1] One victim stated that he was fully disabled and unable to move around his apartment. (Sentencing Tr. at 10). Another had been seriously injured in a work accident that broke his neck, underwent four surgeries, and had to take 16 Vicadin a day. (Sentencing Tr. at 13).

properly concluded that defendant preyed "on vulnerable individuals, people in crisis, in difficult spots in their lives." (Sentencing Tr. at 26).

Second, defendant contends that his sentence is longer than similarly situated defendants and creates an unwanted sentencing disparity in violation of 18 U.S.C. § 3553(a)(6). Defendant cites other cases in which individuals who were convicted of fraud received lower sentences. We consider citations to other cases to be weak evidence to show a national sentencing disparity. *See United States v. Rossi*, 422 F. App'x 425, 435 (6th Cir. 2011) ("The fact that the district courts in other unrelated cases. . . found those specific defendants deserving of sentences within the Guidelines does not demonstrate that the district court in [this] case abused its discretion in imposing a sentence above the Guidelines."). The district court properly rejected a similar argument advanced below and noted that the cases relied upon by defendant did not necessarily involve Ponzi schemes.[2] (Sentencing Tr. at 29).

Third, defendant emphasizes that he cooperated with the government. However, the district court considered this factor, and ultimately concluded that it did not warrant a lesser sentence because "this [cooperation] was only after the SEC came knocking on his door that he and his lawyer came in and spoke to the government." (Sentencing Tr. at 29). We find no abuse of discretion.

*2. Use of Religion*

At sentencing, several victims testified that defendant professed his faith in Christianity in order to secure their trust. This included quoting scripture, professing his faith in Jesus, praying with

---

[2] The district court had previously noted the unique harms defendant's Ponzi scheme inflicted. (Sentencing Tr. at 27).

his victims, and asking them to request the court's leniency because he was a Christian. The district court cited defendant's "use of religion and appealing to common religious values" as an aggravating factor under § 3553(a)(1). (Sentencing Tr. at 26).

Defendant claims that it was improper for the district court to consider his use of religion to lure investors into his Ponzi scheme. Under U.S.S.G. § 5H1.10, religion is not a factor relevant in the determination of a sentence. However, this does not mean that a district court cannot consider defendant's appeal to a vicim's religious beliefs as an aggravating factor. In *United States v. Gunderson*, the district court punished a defendant more severely because "he was engaged in a profession of giving moral advice [running a Christian counseling service] when he committed [fraud]." 211 F.3d 1088, 1089 (8th Cir. 2000) (internal quotation omitted). The Eighth Circuit affirmed the sentence and held that it did not violate § 5H1.10 because the crime "reflected a moral failure, not a spiritual failure . . . . This sort of inquiry into the degree of a defendant's blameworthiness is entirely appropriate to the court's selection of a sentence . . . ." *Id.*

It is true that a sentencing court may not punish a defendant for adhering to a particular religion or hold defendant to a higher standard based on the defendant's professed faith. *Id.* For example the Fourth Circuit vacated a sentence after a district court injected its own sense of religiosity into its judgment by stating that "*those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests.*" *United States v. Bakker*, 925 F.2d 728, 740 (4th Cir. 1991) (emphasis in original, internal quotation marks omitted). The court determined that this statement "create[d] the perception of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending it." *Id.* In the case

before us the district court made no similar statement. Instead, we are confronted with a situation more akin to the one in *Gunderson*. Accordingly, we detect no abuse of discretion by the district court.

### 3. Victim Statements

The district court heard statements from six victims and indicated that these statements influenced its decision to impose a harsher sentence. Defendant argues that this was improper because the victims had not sworn to tell the truth.

Because defense counsel did not raise this issue in district court after the court asked for any additional objections, defendant concedes that we review for plain error. "To establish plain error, a defendant must show the following: '(1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings.'" *United States v. Baker*, 559 F.3d 443, 454 (6th Cir. 2009) (quoting *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998)).

According to the CVRA, victims have a "right to be reasonably heard." 18 U.S.C. § 3771(a)(4). Defendant asks us to require that the victims take an oath. There is no such requirement in the CVRA. In fact, the district court can consider a broad range of information when determining the sentence to impose. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.") Every court that has examined this issue has held that there is no requirement to swear in CVRA

victims. *See United States v. Myers*, 402 F. App'x 844, 845 (4th Cir. 2010); *United States v. Shrader*, No. 1:09-0270, 2010 WL 4781625, at *3 (S.D. W. Va. Nov. 16, 2010) ("It is apparent that a victim has the right to speak at sentencing about the impact a defendant's criminal conduct has had upon her without being placed under oath and cross examined just as a defendant has the right to allocute in mitigation of sentence."); *United States v. Marcello*, 370 F. Supp. 2d 745, 750 (N.D. Ill. 2005) ("Given changes in the *Federal Rules of Criminal Procedure*, victims have a right to speak in open court in a manner analogous to the defendant's personal right of allocution at sentencing. . . . Today, both defendant and victim have the right to speak without being sworn as a witness before sentence is passed." (internal citations omitted)).

Given this weight of authority, there was no plain error. Moreover, defendant cannot show an impact on his substantial rights or that the district court's conduct seriously affected the fairness, integrity, or public perception of his sentencing. Defendant did not ask that the victims be placed under oath, and did not quarrel with their statements. Instead, he replied:

> I wanted to tell the victims that I am sorry. *And what they said is right*, Your Honor. I did steal their money. I did take advantage of emotions. And I'm sorry for that.

(Sentencing Tr. at 24-25) (emphasis added).

*4. Advance Notice For Upward Variance*

Defendant argues that he was entitled to advance notice that he could receive a sentence above the advisory guidelines range. Because defendant did not raise this issue before the district court, he concedes that we review for plain error. *Baker*, 559 F.3d at 454.

The district court specifically stated that the 120-month sentence was a variance under § 3553(a), not an upward departure under the guidelines. Fed. R. Crim. P. 32(h) requires the district court provide reasonable notice for departures under the sentencing guidelines, but not for variances under § 3553(a). *Irizarry v. United States*, 553 U.S. 708, 716 (2008); *United States v. Blackie*, 548 F.3d 395, 403 (6th Cir. 2008). Citing *Irizarry*, the district court allowed defendant an opportunity to call witnesses or to offer proof in mitigation. Defendant's attorney asked the district court for a "moment" and, after consultation, elected not to offer any additional proof.

Defendant contends that Rule 32 should still apply because one of the aggravating factors the district court cited in determining his sentence--preying on vulnerable individuals-- is similar to the vulnerable victim enhancement contained in U.S.S.G. § 3A1.1(b). Because the PSR's sentencing guidelines calculation did not include the vulnerable victim enhancement, defendant concludes that the district court applied § 3A1.1(b) without giving advance notice under Rule 32.

Defendant ignores our holding that district courts may choose to apply an upward variance without having to apply an upward departure:

> Simply stated, variances from Guidelines ranges that a District Court may find justified under the sentencing factors set forth in 18 U.S.C. § 3553(a) include a much broader range of discretionary decisionmaking than departures. . . . Thus, although the Guidelines may prohibit a district court from departing in light of a particular factor, that prohibition does not necessarily preclude the district court from considering the same or a similar factor when determining whether to vary under § 3553(a).

*United States v. Tristan-Madrigal*, 601 F.3d 629, 635 (6th Cir. 2010) (internal citations and quotation marks omitted).

The district court was not obligated to apply § 3A1.1(b) in order to make an upward variance under § 3553(a). Accordingly, there was no Rule 32 violation.

**III.**

The judgment of the district court is **affirmed**.