NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0149n.06

Case No. 24-3134

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Mar 18, 2025 |
| Plaintiff-Appellee, | ) | KELLY L. STEPHENS, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
|  | ) |  |
| CORNELL JAMES HARP, | ) |  |
| Defendant-Appellant. | ) | OPINION |
|  | ) |  |

Before: SUTTON, Chief Judge; GRIFFIN and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Cornell Harp pleaded guilty to a felony drug offense and the district court sentenced him to a 188 months' imprisonment followed by a lifetime term of supervised release. Harp challenges his above-Guidelines sentence as procedurally and substantively unreasonable. Discerning no error, we affirm.

**I.**

On February 1, 2023, a deputy sheriff with the Portage County Sheriff's Office pulled Harp over for traffic violations. During the traffic stop, a trained police dog alerted to the presence of drugs in Harp's vehicle. A search revealed numerous bags containing 40,511 methamphetamine pills, weighing over 10.5 kilograms.

A grand jury indicted Harp for possessing methamphetamine with intent to distribute. Harp pleaded guilty to the charge pursuant to a written plea agreement.

The case proceeded to sentencing. At the sentencing hearing, the district court determined that Harp's advisory Sentencing Guidelines range was 121 to 151 months. This range corresponded to a total offense level of 31 and a criminal history category of II. Harp's criminal history included a federal drug conviction for conspiracy to possess with intent to distribute cocaine. Harp left prison in 2019 for that conviction to begin serving his term of supervised release, which terminated in March 2022. The instant offense occurred less than a year after the termination of his supervised release. Harp's criminal history computation excluded three felony convictions and sixteen misdemeanor convictions. The convictions dated back to 1992 when Harp was eighteen years old and continued until his prior federal drug conviction in 2009.

During the sentencing hearing, the district court advised the parties that it was contemplating an upward variance based on the nature and circumstances of the offense; Harp's criminal history; and the need for the sentence to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and protect the public. After hearing arguments from the parties, the district court imposed a sentence of 188 months' imprisonment (37 months above the high end of the advisory Guidelines range) followed by a lifetime term of supervised release. After the district court invited objections to the sentence, Harp objected to the upward variance. The district court noted the objection for the record. This appeal followed.

## II.

Harp challenges the reasonableness of his sentence. We review sentences for both procedural and substantive unreasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007).

## A.

We review the procedural reasonableness of Harp's sentence for plain error. This is because Harp made no argument about the procedural aspects of the sentence to the district court

and raised no specific objection after being invited to do so. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc); *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). When asked the *Bostic* question at sentencing, Harp's counsel replied, "we would object to the sentence at this time, the upward variance." R. 51, PageID 271. Harp contends that his *Bostic* objection preserved "all of the procedural and substantive arguments regarding the reasonableness of the District Court's sentence for this . . . Court's review." D. 34 at p.10. We disagree. When "a party answers the *Bostic* question in the affirmative, but at such a high degree of generality that the district court has no opportunity to correct its purported error and the court of appeals has been deprived of a more detailed record to review," plain-error review applies. *United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009). Harp's generalized *Bostic* objection merely reiterated the argument he made at the sentencing hearing regarding the length of the sentence.

In assessing procedural reasonableness, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. at 51. Under plain-error review, Harp must show "(1) error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) affected the fairness, integrity, or public reputation of his judicial proceedings." *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010). He cannot meet this standard.

*Term of Imprisonment*. Harp argues the district court erred by failing to notify him that it was considering an upward variance prior to his sentencing hearing, in violation of Federal Rule of Criminal Procedure 32(h). Such notice was not required here. Rule 32(h) requires that a district court provide "reasonable notice that it is contemplating . . . a departure" from the Guidelines. A

"departure" is a "term of art" that refers to a sentence outside the Guidelines range based on the district court's application of a particular Guidelines provision. *Irizarry v. United States*, 553 U.S. 708, 714 (2008). On the other hand, a "variance" results from the district court's imposition of a sentence outside the advisory range as the result of its weighing of the § 3553(a) factors. *United States v. Grams*, 566 F.3d 683, 686–87 (6th Cir. 2009) (per curiam) (citation omitted). The district court "varied" upwards; it did not "depart." So no Rule 32(h) violation occurred. *See United States v. Grigg*, 434 F. App'x 530, 534 (6th Cir. 2011) ("Fed. R. Crim. P. 32(h) requires the district court provide reasonable notice for departures under the sentencing guidelines, but not for variances under § 3553(a)." (citing *Irizarry*, 553 U.S. at 716)).

At any rate, a sentence may be procedurally unreasonable when "the facts or issues on which the district court relied to impose a variance came as a surprise and [the defendant's] presentation to the court was prejudiced by the surprise." *United States v. Coppenger*, 775 F.3d 799, 804 (6th Cir. 2015) (quotation omitted). No such surprise occurred. The district court informed the parties during the sentencing hearing that it was considering an upward variance and then heard argument on that issue. The district court did not err, as Harp contends, by "not tell[ing] the parties ahead of time that it was considering an upward variance based upon Mr. Harp's prior federal case." D. 21 at p.32. "Garden variety considerations of . . . criminal history, likelihood of re-offense, seriousness of the crime . . . and so forth should not generally come as a surprise to trial lawyers who have prepared for sentencing." *Irizarry*, 553 U.S. at 716 (quotation omitted). All were aware of Harp's criminal history, including his prior federal drug conviction. In fact, the district court expressed concern about Harp's criminal history months before sentencing during the change-of-plea hearing. The district court's consideration of Harp's prior federal conviction

in varying above the advisory Guidelines range could not have amounted to surprise. Harp thus fails at the first step of the plain-error test.[1]

*Term of Supervised Release.* Harp argues that the district court did not properly consider the 18 U.S.C. §§ 3583(c) and 3553(a) factors when imposing a lifetime term of supervised release. To the contrary, the district court provided sufficient reasoning for imposing a life term of supervision. It explained that Harp was a high-volume interstate drug trafficker who had put thousands of doses of addictive drugs into the community; that there was an extraordinary amount of harm; that Harp had a history of drug trafficking; and that prior sanctions had failed to provide deterrence. The district court found that a life term of supervision was "required under this record and this history," R. 51, PageID 269, referring to the facts and factors that the court relied on in determining Harp's term of imprisonment. Thus, the district court did not plainly err in imposing Harp's life term of supervised release. *See United States v. Presto*, 498 F.3d 415, 419 (6th Cir. 2007) (noting that the district court "engaged in a single consideration of the sentencing factors, which embraced both the incarceration sentence and the supervised release term"); *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012) ("In outlining its reasons for imposing the sentence of incarceration . . . the district court was also outlining the reasons supporting the conditions of supervised release."); *see also* 18 U.S.C. § 3583(c).[2]

---

[1] In his reply brief, Harp argues that the district court relied on clearly erroneous facts in determining his sentence, for example that he was an "international" drug trafficker and that he had the "highest risk of recidivism." We need not address this because a party forfeits arguments first made in a reply brief. *See United States v. Allen*, 93 F.4th 350, 358 (6th Cir. 2024).

[2] To the extent that Harp intended to substantively challenge the term of supervised release instead of, or in addition to, his procedural challenge with his modest scattering of conclusory statements such as that "[t]he facts presented at sentencing did not warrant a lifetime term of supervised release," D. 21 at p.33, that challenge fails. The district court reasoned within its broad range of discretion and gave reasonable weight to the relevant § 3553(a) factors when it imposed the term of supervised release.

**B.**

We turn next to Harp's substantive-reasonableness arguments. "The essence of a substantive-reasonableness claim is whether the length of the sentence is greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010) (internal quotation marks omitted). Substantive reasonableness concerns "whether the sentencing court gave reasonable *weight* to each" of the relevant § 3553(a) factors. *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019). To that end, we take "into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *United States v. Dunnican*, 961 F.3d 859, 880 (6th Cir. 2020) (quoting *Gall*, 552 U.S. at 51). When raised by a defendant, substantive reasonableness focuses on whether a "sentence is too long." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). We review the substantive reasonableness of Harp's sentence for an abuse of discretion. *Gall*, 552 U.S. at 51.

"In general, we must give 'due deference' to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors." *Dunnican*, 961 F.3d at 880 (quoting *Gall*, 552 U.S. at 51). Accordingly, our task "is not to pick the sentence that we would prefer . . . but only to ensure that the sentence chosen by the district court fell within its broad range of reasoned discretion." *United States v. Lynde*, 926 F.3d 275, 283 (6th Cir. 2019). Thus, "[t]he fact that [we] might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

Although we may apply a rebuttable presumption of substantive reasonableness for sentences within or below the advisory Guidelines range, we "may not apply a presumption of unreasonableness" for above-Guidelines sentences. *Id.*

Recall that the district court sentenced Harp to 188 months' imprisonment, 37 months above the high end of his 121-to-151-month Guidelines range. In assessing substantive reasonableness, we must consider the extent of the district court's upward variance from Harp's Guidelines range. *See United States v. Johnson*, 26 F.4th 726, 736 (6th Cir. 2022). "The greater the variance, the more compelling the justification must be." *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (citation omitted). To that end, the district court should explain "how the present case is different from the typical or mine-run case that occupies the heartland to which the [Sentencing] Commission intends individual Guidelines to apply." *Id.* (internal quotation marks omitted).

Harp argues that (1) his sentence was greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a) "given the mitigating facts of his case, including his age, sincere remorse, supportive family, and role as a father and caregiver to his children," D. 21 at p.29; (2) the district court "gave an unreasonable amount of weight" to his prior drug-trafficking conviction and criminal history, which his Guidelines range accounted for, *id.* at 27; and (3) his sentence "was far beyond the average sentences imposed nationally" for "similarly situated defendants," *id.* at 29.

Harp's arguments fail. Prior to imposing the sentence, the district court characterized the Guidelines range as the "benchmark" or "starting point" for the sentence calculation and considered the pertinent § 3553(a) factors, including the nature and circumstances of Harp's offense, his history and characteristics, and the need for an above-Guidelines sentence to comply with § 3553(a)(2).

The district court noted the "extraordinary offense conduct," finding it particularly concerning that Harp's conviction occurred less than a year after he was released from supervision

for his prior drug-trafficking conviction, demonstrating an ability to "ramp up and very quickly reconnect with large-scale drug traffickers." R. 51, PageID 260, 263. In connection with the instant federal drug conviction, he admitted transporting 150 to 200 kilograms of cocaine per month, which the district court noted was a significant volume. The district court further pointed to conduct after Harp's arrest where he exhibited concern for his coconspirators and sought to help them. The district court also discussed Harp's previous criminal history. Acknowledging that many of Harp's nineteen prior convictions occurred when he was much younger, it nevertheless found that they reflected "a pattern of the inability to follow the law." *Id.* at 264. And despite multiple opportunities for rehabilitation, Harp was not deterred. Taken together, the district court found that these points placed Harp's case "at a whole different level." *Id.* at 260. And that explained why a sentencing disparity compared to similarly situated defendants was warranted.[3]

Harp challenges the weight the district court attributed to his prior drug-trafficking conviction and criminal history, which the Guidelines range already took into account. Yet a sentencing court can "consider a defendant's criminal history in its analysis of the 18 U.S.C. § 3553(a) factors, even when the defendant's guidelines range already reflects it." *United States v. Lee*, 974 F.3d 670, 677 (6th Cir. 2020). And "[w]e have consistently rejected defendants' arguments that a district court cannot impose upward variances based on criminal history, simply because the Guidelines calculation already accounts for criminal history as a factor." *Dunnican*, 961 F.3d at 881. When we have upheld upward variances based on a defendant's criminal history—a history already captured by the advisory Guidelines range—we have "emphasized the

---

[3] The presentence investigation report revealed that during the last five years, there were 120 defendants who, like Harp, had a total offense level of 31 and a criminal history category of II where the primary offense conduct corresponding to U.S.S.G. § 2D1.1 involved methamphetamine as the primary drug type. The average length of imprisonment imposed for these defendants was 102 months and the median length was 120 months.

relationship between the instant offense and the defendant's prior offenses." *Lee*, 974 F.3d at 677; *see, e.g.*, *Dunnican*, 961 F.3d at 881 (upholding an upward variance for firearm offenses based in part on the defendant's "previous criminal history, which included two separate violent crimes that he committed with firearms," and the fact that the defendant committed the instant firearm offenses "only a few months upon being released from a second lengthy prison stay"). Harp's offense relates to his prior criminal conduct, which occurred less than a year after the supervised release terminated for his prior drug-trafficking conviction. The district court did not abuse its discretion in finding that this temporal proximity and his extensive criminal history—which included multiple other drug offenses—demonstrated recidivism that prior sanctions had failed to deter and therefore warranted an above-Guidelines sentence.

Contrary to Harp's claim, the district court considered mitigating facts. The court explicitly acknowledged: Harp's age—he was 50 years old at the time of sentencing; Harp's statement accepting responsibility at the sentencing hearing; that Harp obtained a GED; that Harp suffered from his mother's passing in his teens; and that Harp had a supportive family and children. The district court nevertheless reasonably attributed more weight to Harp's offense conduct, his criminal history that the Guidelines range did not account for, and his prior drug-trafficking conviction. *See United States v. Adkins*, 729 F.3d 559, 571 (6th Cir. 2013).

Harp argues that our decisions in *United States v. Brown*, 828 F. App'x 256 (6th Cir. 2020), and *United States v. Warren*, 771 F. App'x 637 (6th Cir. 2019), show that his sentence is unreasonable. Both cases are distinguishable.

In *Brown*, we vacated the district court's upward variance to 60 months' imprisonment from a Guidelines range of 24 to 30 months' imprisonment after the defendant pleaded guilty to distributing heroin. 828 F. App'x at 256. We concluded that the sentence was substantively

unreasonable because the defendant sold less than a gram of heroin, which the government noted would not normally have been the basis for a federal prosecution, and because the district court relied mainly on Brown's "extensive criminal history—a problem common to all defendants with a criminal history category of VI—to justify doubling his sentence from the top of the Guidelines range, and in doing so did not sufficiently account for avoiding unwarranted sentence disparities." *Id.* at 259–60; *see* 18 U.S.C. § 3553(a)(6). Harp's offense involved significantly more drugs. The upward variance was not nearly as substantial relative to the Guidelines range as the variance in *Brown*. And the district court justified the sentencing disparity not based on only Harp's criminal history but, as discussed, on the seriousness of the offense conduct, the need for adequate deterrence, the harm caused, and the need to protect the public.

In *Warren*, we vacated the district court's upward variance along similar lines as *Brown*. There, the defendant pleaded guilty to being a felon in possession of a firearm and the district court sentenced him to 120 months' imprisonment, nearly double the high end of the defendant's 51-to-63-month Guidelines range. *Warren*, 771 F. App'x at 638. We held that "[b]ecause the district court's only discussion of whether the selected sentence avoid[ed] unwarranted sentencing disparities hinge[d] on criminal history factors addressed by the Guidelines, [it] insufficiently distinguished Warren from other offenders in the same criminal history category," and therefore its reasoning was "insufficient to justify such a stark departure from the Guidelines." *Id.* at 642. Again, Harp's upward variance was not nearly as substantial relative to his Guidelines range, and the district court justified the sentence not only based on Harp's criminal history but also on other appropriate § 3553(a) factors.

In the end, Harp's position boils down to a disagreement with the outcome of the district court's balancing. *See United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006); *see also United*

*States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007) ("Not all [§ 3553(a) factors] are important in every sentencing; often one or two prevail, while others pale.").  But as long as a district court examines the appropriate § 3553(a) factors, it "may place great weight on one factor if such weight is warranted under the facts of the case."  *Adkins*, 729 F.3d at 571 (citation omitted).

District courts have wide discretion in fashioning sentences.  Although we may not have imposed the same sentence in the first instance, we must give deference to the district court. Considering the above, the district court did not abuse its discretion in fashioning Harp's sentence.

## III.

Because we find no reversible error, we **AFFIRM** the district court's judgment.